CHARLES EARL MARSHALL v. STATE OF NEBRASKA.

FILED OCTOBER 6, 1927. No. 25727.

*Nickerson & Nickerson* and *Pitzer & Tyler,* for plaintiff in error. .

*O. S. Spillman, Attorney General,* and *T. J. McGuire, contra.*

Heard before GOSS, C. J., ROSE, GOOD, THOMPSON and EBERLY, JJ., ELDRED and HASTINGS, District Judges.

L. S. HASTINGS, District Judge.

The defendant was tried and convicted in the district court for Sarpy county, Nebraska, upon the charges of forgery and uttering forged notes. The information upon which he was convicted contained four counts. In the first count of the information defendant was charged with having forged the signature of Mike Klien to a note in the amount of $1,500, the second count charged the defendant with uttering and publishing said note, and the third count charged the defendant with having forged the signature of H. A. Timmerman to a note in the amount of $2,500, and the fourth count charged the defendant with uttering and publishing the Timmerman note. By this proceeding the defendant seeks a reversal of the judgment of conviction.

Before the arraignment the defendant moved to quash the information, one of the grounds being that same was not verified as required by law. The motion was overruled and the ruling thereon is assigned as error. An examination of the information discloses that it has no formal verification attached to it. The information is in the form of an affidavit. Immediately following the title of the case and preceding the information appears the following: "State of Nebraska, County of Sarpy, ss." In the body of the information the county attorney says he gives the

court to understand and be informed, then follows the first count, wherein forgery is charged in direct and positive terms, and in the beginning of the second, third and fourth counts the county attorney "being first duly sworn on his oath shows," then follow in direct and positive terms the charges of uttering and publishing, forgery, and uttering and publishing. At the end of the information appears the signature "H. A. Collins," the county attorney referred to in the information, and following his signature: "Subscribed and sworn to before me this 9th day of October, 1926, Eliza M. Wilson, Clerk of the District court, by C. S. Marth, Deputy." To this is attached the seal of the court.

Counsel for defendant contend that because no formal verification in the form of a statement or certificate is appended to the information stating that the facts therein contained are true, or true as the county attorney verily believes, the same is not verified by the oath of the county attorney, as required by section 10088, Comp. St. 1922. The statute requires that the information "shall be verified by the oath of the county attorney, complainant, or some other person." The statute is mandatory and has been so construed by this court. *Trimble v. State*, 61 Neb. 604. Verify means "The swearing to an affidavit. To confirm and substantiate by oath." 3 Bouvier, Law Dictionary (3d Rev.) 3394. To meet the requirements of the statute, it is sufficient if it appears, no matter in what form, that the truth of the charge or charges contained in the information are confirmed and substantiated by the oath of the county attorney. The county attorney subscribed to the information and was sworn thereto by an officer qualified to administer the oath. It appears in the information that he made the charges on his oath; the legal import of this is that the county attorney made oath that the charges therein were true. This is sufficient to meet the requirements of the statute, although no formal verification was appended thereto. However, the form used is not recommended as a model to be used in verifying informations. A form meeting all requirements of the statute

is set out in *Nichols v. State,* 109 Neb. 335, and should be used in verifying informations, although any form may be used that meets the requirements of the statute.

It is assigned as error that the information was not filed while the court was in session at a regular jury term, and that by reason thereof the court did not acquire jurisdiction to try the defendant.

It appears from the record that on preliminary examination the defendant was held to appear at the next jury term of the district court for Sarpy county, which commenced on October 11, 1926. A transcript of the preliminary examination was filed on August 2, 1926. The information on which defendant was tried was filed October 9, 1926.

It is stated by counsel, although such does not appear in the record, that the term during which the information was filed was an equity term, and that court was not in session at the time the information was filed. The question here presented was not brought to the attention of the trial court in any way, but is raised for the first time in this court. In support of their contention counsel cite *In re Vogland,* 48 Neb. 37, and *Cubbison v. Beemer,* 81 Neb. 824, wherein it is held:

"Under the provisions of chapter 108 of the Laws of Nebraska passed in 1885, the requirement that 'all informations shall be filed during term, in the court having jurisdiction of the offense specified therein,' is mandatory, and an information, upon which the accused is to be tried for felony, is void if filed in vacation."

If the statute on which those decisions were based was still in force the contention of counsel would be correct, but in 1915 the legislature amended the section by striking out "during the term," and the section now reads:

"All informations shall be filed in the court having jurisdiction of the offense specified therein, by the prosecuting attorney of the proper county as informant." Section 10087, Comp. St. 1922.

The plain intention and purpose of the legislature in

making that amendment was to do away with the construction placed thereon by this court in the cases cited. To give the statute the construction that counsel for the defendant now contends for would be to judicially legislate that back into the statute which the legislature deliberately took out by the amendment. This we are not inclined to do. The statute as amended does not require that an information must be filed "during the term," and no good reason ·exists for requiring it to be done. "In the absence of a statute to the contrary, informations may be properly filed with the clerk of court in vacation." 31 C. J. 637, sec. 151; *State v. Kyle,* 166 Mo. 287; *State v. Corbit,* 42 Tex. 88. An information may now be filed in vacation in the court having jurisdiction of the offense.

Counsel for defendant cite *Nichols v. State, supra,* as holding that an information must be filed when the court is in session at a jury term. This is not correct. In that case a brief form of an information charging murder in the first degree was approved as sufficient and as a proper standard to be followed, and the question now under consideration was not involved or decided. We conclude that the trial court was not without jurisdiction to try the defendant on account of the information having been filed while the court was not in session at a regular jury term.

It is urged that there is a material variance between the name "H. A. Timmerman," alleged to have been forged, and the name "H. A. Timnernan" appearing as maker on the forged ·note. The evidence shows beyond any doubt that it was the name "H. A. Timmerman" that was intended to be forged on the note, and that of no other person. The simulation of the signature of "H. A. Timmerman" on the forged note is so well executed that a person used to comparing signatures might be deceived thereby. In writing the signature of "Timmerman" the forger misspelled the name by substituting the letter "n" in two places in the name for the letter "m," but the signature is so cleverly simulated otherwise that it takes more than a casual inspection to determine that the name has been

misspelled and that it is not the genuine signature of H. A. Timmerman.

It is upon the misspelling of the name "Timmerman" and the spelling of it as "Timnernan" that the defendant predicates his contention of material variance. It is claimed that by reason of the misspelling of the name "Timmerman" the names "Timmerman" and "Timnernan" are not *idem sonans,* and that the trial court should have held as a matter of law that such variance was fatal. The names are practically *idem sonans,* and the person writing the name to the forged note intended that it should be taken for the name "Timmerman," and having written it with that intention in such a way as might deceive a person of ordinary prudence, his fraudulent purpose and felonious intent to commit a forgery are as clearly manifested as they would have been if the spelling had been entirely correct.

"The general rule is that it is sufficient if the resemblance between the counterfeit and the genuine instrument or signature is such as to deceive a person of ordinary observation, and thus to create the possibility of fraud. It is not necessary that the similarity should be such as to impose on an expert. So it is not necessary that there should be so perfect a resemblance to the genuine handwriting of the party whose name is forged as would impose on persons having particular knowledge of the handwriting of such party. And one who signs to an instrument a name which he intends to be that of another person may be guilty of forgery, though the name is misspelled or incorrectly written, as where the name 'Henry Heinis' was signed to a note with the intention that it should be supposed to be the signature of 'Henry Hein,' or where 'Hawood' was signed for 'Haywood'." 12 R. C. L. 143, sec. 6.

See, also, *State v. Chance,* 82 Kan. 388, 27 L. R. A. n. s. 1003, and note; *State v. Gryder,* 44 La. Ann. 962, 32 Am. St. Rep. 358; *People v. Alden,* 113 Cal. 264; *State v. Covington,* 94 N. Car. 913, 55 Am. Rep. 650; *Baysinger v. State,* 77 Ala. 63, 54 Am. Rep. 46; *Gooden v. State,* 55 Ala. 178; *Peete*

*v. State,* 2 Lea (Tenn.) 513; *Rollins v. State,* 22 Tex. App. 548, 58 Am. Rep. 659; *Hall v. State,* 55 Tex. Cr. Rep. 267; *Rubio v. State,* 50 Tex. Cr. Rep. 177.

When the author of the forgery affixed to the note the signature "H. A. Timnernan" and intended that it should be regarded as the signature of H. A. Timmerman, the act was not prevented from being a forgery by the circumstance that he misspelled the name. It cannot be said as a matter of law that the variance in such names is so great as to prevent the deception of any person of ordinary prudence. The misspelling of the name was an error on the part of the author of the forgery and the law does not permit him to use it as a shield to protect himself from the consequences of his criminal act.

It is next urged there is a fatal variance between the name "H. A. Timnernan," signed as maker to the forged note offered in evidence, and the name "H. A. Tinnerman," signed to the copy of the forged note set out in counts three and four of the information. The cases bearing upon this question are many, some sustaining the position of defendant that the variance in names here presented is fatal and others holding that even a greater variance is not fatal. We believe from examination of the cases that the cases holding that such variance is not fatal are more in accord with our Criminal Code.

"In adopting the Criminal Code the legislature intended to provide a rational system of procedure for the trial of persons accused of crime, and to abolish the hypertechnical rules of the common law." *Burlingim v. State,* 61 Neb. 276.

Under section 10075, Comp. St. 1922, the variance in names, in order to be material, must be such as to be material to the merits of the case or such as may be prejudicial to the defendant. In construing the statute in *Goldsberry v. State,* 66 Neb. 312, 332, it was said: "This section does away with all objections that are merely technical, and do not affect the substantial rights of the defendant. It requires that every objection grounded upon alleged difference between a descriptive averment and the evidence

given in support thereof shall be disregarded, unless the difference is so material as to mislead the defendant and prejudice him in making his defense."

In 31 C. J. 840, sec. 451, the rule is announced: "Under the modern practice, a variance is not material unless it misleads accused in making his defense or may expose him to the danger of being again put in jeopardy for the same offense."

In 14 R. C. L. 207, sec. 51, it is said: "Slight variations in orthography have sometimes been held fatal and sometimes not, but it may be stated as the general rule deducible from the modern decisions that where the name as written in the indictment may be pronounced in the same way as the name given in the evidence, although such may not be the strictly correct pronunciation, the variance will not be regarded as fatal, unless the variant orthography be such as would be likely to mislead the defendant in preparing his defense."

The following cases hold a variance in names as great or greater than the variance in the names here in question not to be fatal: *People v. Spoor,* 235 Ill. 230, 126 Am. St. Rep. 197; *Pitsnogle v. Commonwealth,* 91 Va. 808, 50 Am. St. Rep. 867; *State v. Patterson,* 24 N. Car. 346, 38 Am. Dec. 699; *State v. White,* 34 S. Car. 59, 27 Am. St. Rep. 783; *Rowan v. State,* 57 Tex. Cr. Rep. 344, 136 Am. St. Rep. 1005; *Santolini v. State,* 6 Wyo. 110; *Millett v. Blake,* 81 Me. 531; *Myer v. Fegaly,* 39 Pa. St. 429; *Elliott v. Knott,* 14 Md. 121; *Langdon v. People,* 133 Ill. 382.

We conclude that the names in question may be pronounced so nearly alike, although such may not be strictly the correct pronunciation, that we cannot say as a matter of law that the variant orthography was such as to mislead the defendant to his prejudice in making his defense. Furthermore, in this connection the record shows that, after defendant's motion to quash said counts on account of the variance in names and before the defendant was arraigned, counsel for the state made application to correct the variance in names by amendment to the information, and the

trial court granted the application. The defendant then renewed his motion to quash said counts of the information "as amended," and on the court overruling the motion the defendant moved the court to quash said counts of the information "as amended" for the reason there had been no preliminary examination on the offense charged in said counts "as amended," and this motion was overruled. When the forged note, exhibit 18, was offered in evidence, no objection was made by the defendant on account of any variance between said names. The copy of the information set out in the transcript does not show that such amendment was actually made, but the record does show that defendant treated the information as amended, and he is not now in a position to complain because the manual change might not have been made therein correcting the variance in names  On the record as presented, we conclude the variance between such names could in no way be prejudicial to the defendant or in any way mislead him in making his defense.

It is further contended in this connection that the question as to whether there was a material variance in names should have been submitted to the jury for their determination, and that there was error in not doing so, also that the court erred in assuming in the instructions to the jury that "Timnernan" as signed to the forged note was the name "Timmerman." We are unable to find in any instruction given by the trial court where it was so assumed. The instructions left the question to the jury to determine whether the defendant had forged the signature of H. A. Timmerman. The trial court in the instructions did not, "either by omission or by expression, withdraw from the consideration of the jury an issue or essential element necessary for its determination." The above rule announced in the case of *Osborne v. State,* 115 Neb. 65, does not apply, as contended by counsel for defendant. It would have been proper for the court to have instructed the jury without any request therefor that if they found there was a material variance between such names  to acquit the defendant. The

defendant did not request any instruction bearing upon this question and in the absence of such request the failure of the court to so instruct was not error. This court has held: "Before error can be predicated upon the failure to charge the jury upon a given point, there must have been a request therefor, unless it is upon a question where a statute or positive rule of law requires the giving of such instruction." *Georgis v. State,* 110 Neb. 352; *Welter v. State,* 112 Neb. 22.

The precise question here involved was decided in the case *of Santolini v. State, supra,* wherein it was held:

"Failure to instruct the jury that a variance between the name of the maker of a check as alleged in an indictment for forgery, and as signed to the check, is fatal if they are not *idem sonans,* is not reversible error when no request is made for such instruction." (71 Am. St. Rep. 906).

The defendant complains that the trial court erred in denying his application to permit him to inspect certain books and papers named therein and in permitting same to be introduced at the trial when inspection and copies were denied. Among the papers which defendant asked to inspect were the two forged notes. Under section 8901, Comp. St. 1922, it is left to the discretion of the trial court whether or not an order should be entered directing the adverse party to give the other, within a specified time, an inspection and copy or permission to take a copy of the books, and it is also within the discretion of the trial court whether or not to exclude such books and papers at the trial if inspection or copies is not permitted. The trial court in denying the application of defendant exercised his discretion and there was no abuse thereof. Furthermore, the record shows that the defendant was not prejudiced in any way by the denial of said application, as he was furnished photographic or photostatic copies of the forged notes, as well as practically all other exhibits offered in evidence by the state prior to the trial. Defendant seems to complain, not so much of the fact that he was denied an inspection

and copy of the instruments demanded, as his failure to have the originals in his possession so that he might make an ink test of the signatures on the two forged notes, also of the ink in the number and due date on the notes and of entries in the note register. If this was the main purpose for which he desired the instruments mentioned the trial court certainly did not abuse his discretion in denying the application. To have permitted such experiment with the ink used on such instruments would possibly mutilate them before they were introduced in evidence and destroy, to a great extent, their value as evidence.

The defendant assigns as error the alleged misconduct of the county attorney in causing the defendant's second arrest on another charge the evening before the trial and statements claimed to have been made by the county attorney in the presence of some members of the jury in regard thereto. The defendant supports his claim of the alleged misconduct of the county attorney with his own affidavit. The affidavit of the county attorney and the sheriff flatly contradict the affidavit of the defendant as to such alleged misconduct. Upon the showing thus made the trial court passed upon this question in overruling the motion for a new trial and after an examination of the affidavits we are not disposed to disturb the ruling of the trial court.

It is insisted that the evidence is not sufficient to sustain the verdict. We will not discuss the evidence in detail, to do so would unnecessarily extend the length of this opinion.

It is conceded by the defendant that the names to the notes in question are not the genuine signatures of the persons that they purport to be, also that the notes are in the handwriting of the defendant with the exception of the signature, number and due date in the lower left hand corner of each note. The number and due date of each of said notes is conceded to be in the handwriting of one E. C. Goerke. At the time the forgeries were committed on May 13, 1926, E. C. Goerke was president and the defendant cashier of the First State Bank of Papillion, Ne-

braska, formerly the Farmers State Bank at that place. The evidence shows that irregularities were discovered by the bank examiners in the bank about July 1, 1926, and that thereafter the president, E. C. Goerke, absconded and has not since been apprehended. The bank was taken over by the guaranty fund commission shortly thereafter. The two forged notes were found in the note case of the bank, and the purported makers, on being notified that the bank held their notes, declared their signatures to the notes to be forgeries. The purported makers of said notes, Mike Klien and H. A. Timmerman, were farmers living near Papillion, and who had resided in Sarpy county for many years. Klien had a small deposit account with the bank, Timmerman none. He had formerly done business with the Farmers State Bank before its name was changed to the First State Bank of Papillion. Both of their signature cards were in the bank at the time the forgeries were committed and the author of the forgery undoubtedly copied their names from such signature cards. On the same day that Mike Klien's name was forged to the $1,500 note he received credit on his account in said bank for that sum, it also appears that on the same day an account was opened in said bank with H. A. Tinnerman, Adm'r, and on the same day the ledger sheet of H. A. Tinnerman, Adm'r, shows a credit for the amount of the forged note. On the same day it appears that three checks were drawn against the account of Mike Klien for $500 each, and on the same day three checks appear to have been drawn against the account of H. A. Tinnerman, Adm'r, two for $833.33 and one for $833.34. The checks on such accounts were not drawn by either Klien or Timmerman and they knew nothing of the transactions. The checks drawn against said account as well as the deposit slips were not to be found among the papers of the bank and had apparently been abstracted from the bank by some persons interested in their concealment. The evidence further shows that the defendant wrote the name H. A. Tinnerman, Adm'r, on the ledger sheet containing such account. The defendant

also posted on the ledger sheet in the Tinnerman account the amount of the forged note, and he also posted in the Mike Klien account on the ledger sheet the amount of such forged note. The evidence, however, shows that the notes were entered upon the note register by Mr. Goerke. The defendant testifying in his own behalf admitted the notes, with the exceptions hereinbefore noted, were in his handwriting, but that he made out both notes at the request of E. C. Goerke and delivered them to him unsigned. He denies that he forged the signatures to the notes.

The theory of the defense is that the signatures were forged to the notes by E. C. Goerke and that he uttered the same. Instruments containing the genuine handwriting of the defendant and instruments containing the genuine handwriting of E. C. Goerke were admitted in evidence and were used in making comparisons with the forged signatures on the notes in question. Expert evidence was offered and comparisons made between the genuine handwriting of the defendant and of Goerke with the forged signatures. In behalf of the state expert testimony in regard to handwriting was given by J. Fordyce Wood of Chicago. Mr. Wood appears to have a national reputation as an expert on handwriting and he gave it as his opinion that the forged signatures to the notes were written thereon by the defendant. The reasons upon which he based his opinion are very convincing. Mr. Wallace O. Shane, a recognized expert on handwriting, also gave the same opinion and nearly the same reasons as given by Mr. Wood for believing that the defendant forged the two signatures. A comparison of the genuine writing of the defendant with that of the signatures on the forged notes strongly supports their conclusions.

The defense called two expert witnesses; one, Mr. J. C. Shearman, recognized as a leading handwriting expert, but without the varied and extensive experience of Mr. Wood; the other, Mr. William W. Marsh, whose experience as an expert on handwriting was not so extensive as that of either Mr. Wood or Mr. Shearman. Both of the experts for the

defense pointed out some of the characteristics of the handwriting of Mr. Goerke in the signatures of the forged notes. They also admitted on cross-examination that many of the characteristics of the defendant's handwriting appeared in the signatures on the forged notes. Neither of the experts called by the defense expressed an opinion as to the authorship of the signatures on the forged notes. Mr. Wood on his cross-examination frankly admitted that the forged signatures contained some of the characteristics of Mr. Goerke's handwriting. Counsel for the defendant insists that the forged signatures contain as many of the characteristics of the handwriting of Mr. Goerke as that of the defendant. We do not think the evidence sustains the contention. After a careful examination of the evidence and comparison of the forged signatures with the genuine handwriting of both the defendant and Mr. Goerke, we are satisfied that the verdict of the jury is right and is supported by sufficient evidence.

It is next urged that the separate sentences imposed on counts two and four are erroneous. The record shows that the trial court imposed separate sentences on each count of the information, the sentences being imprisonment for an indeterminate period of from three to twenty years and a fine of $100 on each count. Under the terms of the judgment, the term of imprisonment on count two was to run concurrently with the sentence imposed on count one, and the sentence imposed on count four was to run concurrently with the sentence imposed on count three, but the fines imposed upon counts two and four are additional. We have held: "An information which charges forgery of an instrument and the fraudulent uttering of the same instrument by the same person charges but one crime, and in case of conviction but one penalty can be inflicted." *In re Walsh*, 37 Neb. 454.

It therefore follows that counts one and two charge the same offense and call for a single penalty; the same is also true of counts three and four. With the exception only of the judgment pronounced, the record is found free from

prejudicial error. Under the rule announced in *Kaufmann v. State,* 112 Neb. 718, the judgment entered is modified as follows:

The penalty imposed under count one shall stand as the penalty imposed under both counts one and two and the penalty imposed under count three shall stand as the penalty imposed under both counts three and four; otherwise than as thus modified, the judgment of the district court is affirmed.

AFFIRMED AS MODIFIED.