[File No. 6748.]

BERTEL JACOBSON et al., as Members of the Board of County Commissioners of Ward County, North Dakota, etc., Petitioners, v. FRED M. BREY, as County Auditor of Ward County, North Dakota, Respondent.

E. N. OLSON, D. D. Riley, I. N. Amick, C. G. A. Johnson, and Paul Campbell, Appellants.

(6 NW(2d) 269.)

Opinion filed November 6, 1942.  Rehearing denied November 30, 1942.

*Paul Campbell,* for appellants.

*Ben A. Johnson,* State's Attorney, *B. A. Dickinson,* Assistant State's Attorney, and *Halvor L. Halvorson,* for respondents.

CHRISTIANSON, J.   This is an appeal from an order denying a motion to set aside a judgment in a mandamus proceeding.   The facts necessary to an understanding of the questions presented for determination are substantially as follows:

In February, 1938, the board of county commissioners of Ward county in this state instituted a proceeding in mandamus against Fred M. Brey, the then county auditor, to compel him to set up on his books to the credit of the Ward County Fair Fund the sum of $33,-850.76, and "to sign warrants on bills and accounts against said Fair Fund approved by the board of county commissioners."

The defendant Brey, as respondent in such mandamus proceeding, appeared by counsel and made defense.   He interposed an answer or return wherein he set forth, among other things, the amount of the funds appropriated by the county for the Ward county fair for the various preceding years, and asserted that the appropriations had all been expended and that there were no funds appropriated with which to pay the various bills and accounts against the county, set forth in the petition for the writ of mandamus.   It appears from the record that both the petitioners and the respondent in the mandamus proceeding appeared in person and by counsel at the hearing thereof; that proofs were adduced, including records of the county, and that considerable time was consumed in the trial then had.   On April 19, 1938, the court made and filed findings of fact and conclusions of law in favor of the petitioners and ordered a peremptory writ of mandamus, to be issued commanding the county auditor to set up on his books a credit to the Ward County Fair Fund and to issue and sign warrants for payment of the bills and accounts against the Fair Fund set forth in the petition for the writ of mandamus.

Judgment was entered in conformity with the findings and conclusions and peremptory writ of mandamus was issued in accordance with the provisions of the judgment commanding the county auditor to immediately set up credit of $33,850.76 in the County Fair Fund; and likewise further commanding the county auditor to issue and sign warrants for the payment of the accounts against the Fair Fund referred to in the petition for the writ of mandamus "said accounts and claims being legal obligations properly chargeable against said Fund, such being the duty of the county auditor as evidenced by the law and facts found in this case."

In 1940 five taxpayers instituted an action to have the judgment in the mandamus proceeding declared null and void and to enjoin the county commissioners, the county treasurer, the county auditor and the state's attorney from doing anything ordered in the judgment. The defendants in that action interposed a demurrer to the complaint on the ground, among others, that the complaint did not state facts sufficient to constitute a cause of action. The demurrer was sustained and judgment was entered dismissing the action. The plaintiffs in that suit perfected an appeal to this court, and this court sustained the judgment rendered in the court below. Olson v. Donnelly, 70 ND 370, 294 NW 666.

Thereafter in January, 1941, the same five taxpayers who had brought the action to set aside the judgment made a motion in the district court that the judgment and peremptory writ of mandamus in the mandamus proceeding be vacated, set aside, and adjudged null and void, or in the alternative that the judgment be vacated and set aside and a new trial of said action and proceedings be had upon the following grounds:

"1. That said Judgment is a fraud upon the Taxpayers of Ward County, and upon the rights of the said Taxpayers, and upon the said County.

"2. That said Judgment was obtained and procured, and was made, given and entered by reason of fraud upon the Court; and a mistake of the Court; and fraud and collusion of petitioners as officers and representatives of the County and the Taxpayers of Ward County; and the false, fraudulent and collusive representations and allegations

made and presented to the Court by the said petitioners and their attorneys.

"3. That the said Judgment and Writ of Mandamus are void upon the face of said Judgment, in that the same is contrary to and in violation of the Laws of the State of North Dakota; in that proper and necessary parties defendant are not parties thereto; the petition therein does not state sufficient facts to entitle the petitioners to the relief sought; the relief sought and the acts required to be performed by the respondent is and constitutes a fraud upon Ward County and the Taxpayers of said County, is contrary to the statutes and laws of the State of North Dakota, are beyond and without the power, authority and duty of the respondent, and are of a nature and character that the doing and performance thereof on the part of the respondent, or others is and constitutes a violation of the law and statutes of the State."

The trial court filed a written decision denying the motion from which we quote:

"In February, 1938, the Members of the Board of County Commissioners petitioned the District Court of Ward County for a writ of Mandamus to compel Fred M. Brey, the County Auditor, to issue warrants to payees in connection with bills against Ward County growing out of the County Fair. Judge A. J. Gronna ordered the issuance of an alternative writ and then requested Judge C. W. Buttz to hear the case. An amended petition was later filed and the case heard.

"It appears several days were consumed in the trial. It stands admitted that the case was vigorously and in good-faith contested with able counsel appearing for the defendant.

"Sometime thereafter, on April 19th, 1938, Judge C. W. Buttz filed findings of fact, conclusions of law, and ordered a peremptory writ of mandamus to be issued, and the Clerk accordingly issued the writ.

"In connection with the formal order for judgment he also filed a memo opinion covering twenty-five typewritten pages setting out in detail the facts as he found them, and authorities in support of his decision. It is now almost three years ago, and no appeal has been taken, and the time for appeal, of course, is over. . . .

"In the motion now before the Court, . . . five entirely new parties, strangers to the former action, without the consent of either of the parties to the action, are asking that this judgment be vacated. . . . .

"While the affidavit in support of the motion states that the judgment was obtained by fraud and collusion, no specific acts of fraud are alleged. My interpretation of these affidavits is that in the opinion of the petitioners Judge Buttz was in error in holding as he did. The affidavits after using the words 'fraud and collusion,' state that the judgment is contrary to law and fact and operates as a fraud upon the taxpayers of the county.

"Judge Buttz based his opinion upon testimony that required several days to take, and wrote an exhaustive opinion in which he analyzed the testimony, and in detail gave his reasons for his decision. No part of this testimony is before the Court on this motion.

"From the Bench during the hearing we asked this question on two different occasions: 'Did the defendants in good faith defend the action?' We were advised by Counsel for both sides that he honestly and in good faith defended the action, and was represented by able Counsel. When asked why an appeal was not taken if defendant was dissatisfied, the reply was that he did not care to spend any more money.

"The case before Judge Buttz was heard in the Court Room in Open Court where the public could hear it, and according to statement of counsel many taxpayers were present.

"The ordinary remedy of a litigant who is dissatisfied with the trial court's decision is by appeal. If new evidence is discovered before the decree becomes final, a motion for a new trial is the proper remedy. There are, of course, admitted exceptions in cases where by reason of something done by the successful party to a suit there was in fact no adversary; where the unsuccessful party has been prevented from exhibiting fully his case by fraud or deceit practiced on him by his opponent, as by keeping him away from Court; and false promises of a compromise, or where the defendant never had knowledge of the suit but kept in ignorance by acts of the plaintiff, or where any attorney

fraudulently or without authority assumes to represent a party and connives at his defeat, or where the attorney legally employed corruptly sells out his client's interest to the other side, these and similar cases which show that there has never been a real contest in the trial or hearing of the case.   .   .   .

"The petition and affidavits charge fraud and collusion without setting out any specific acts.   However, I shall treat it as sufficient and decide the case on the merits.

"In an attempt to prove the allegations of the petition there was introduced in evidence an audit report dated November 30th, 1937.   I have devoted several days going over this report.   Like most detailed reports, the proper construction is an issue in the case.   Very much of the argument dealt with the interpretation of this audit, and petitioner's attorney contended that Judge Buttz did not arrive at the proper conclusion.   Some parts of the report are ambiguous.   Even the attorneys in the case differed sharply as to the meanng of some parts.   Oral or other written evidence would help materially to clarify some of those matters.

"The construction given the report by the petitioners is that the Judge did not decide the case right.   Judge Buttz based his decision not on the report alone, but on all the evidence submitted.   The evidence offered at this hearing certainly does not support charges of fraud or collusion, in fact there was no evidence of fraud or collusion at all.   .   .   .

"A judgment based on fraud and collusion should not stand, but it cannot be assumed simply from the filing of an affidavit or a petition that there was fraud or collusion.   It must be proven, and at this hearing no evidence whatever was offered to prove that anyone acted fraudulently, or that the findings of the Judge was the result of collusion.   .   .   .

"The evidence does not support the charge of fraud and collusion. It is, therefore, my duty to deny the motion."

As has been pointed out, this mandamus proceeding was brought in February, 1938, to compel the county auditor to set up on his books to the credit of the Ward County Fair Fund the sum of $33,850.76, and

to sign warrants for claims against said fund approved by the board of county commissioners.

The county auditor appeared and made defense. He interposed an answer wherein he asserted that there were no funds to be set up to the credit of the Fair Fund.

A trial was had at which both petitioners and the respondent appeared and were represented by counsel. The trial resulted in a judgment in favor of the petitioners directing a peremptory writ of mandamus to be issued commanding the county auditor to set up on his books a credit to the County Fair Fund, and to issue and sign warrants for payment of bills and accounts against said Fund approved by the board of county commissioners. Such judgment was entered April 19, 1938.

As pointed out by the trial court, in a memorandum opinion from which we have quoted, the trial consumed considerable time, and the trial court did not content itself by filing formal findings, but prepared and filed an exhaustive memorandum opinion.

In January, 1941, five taxpayers moved that the judgment and peremptory writ of mandamus be vacated and adjudged null and void, or in the alternative that the judgment and writ be vacated and set aside and a new trial of said proceeding be had upon the ground that the judgment therein had been procured by fraud.

In the principal affidavit submitted by the moving taxpayers it is stated that the petitioners and their predecessors in office from November 2, 1922 to April 19, 1938 had expended and paid out and caused to be expended and paid out for and on account of the Fair operations and activities, large sums of money in excess of taxes levied, and the receipts from the operation of the Fair, contrary to law and in fraud of the rights of the moving taxpayers and the taxpayers of said county. It is further asserted in such affidavit that the county commissioners and their attorneys caused the mandamus proceeding to be instituted in fraud of the rights of the taxpayers who move for a vacation of the judgment, and the other taxpayers of the county.

It is stated that the petitioners and their attorneys then well knew that there was no cash in the county treasury belonging to the Fair Fund or available for transfer to the Fair Fund, and that there were no uncollected taxes available for the credit of said Fair Fund.

It is further stated that the said petitioners and their said attorneys made false allegations in their application for the writ; that they falsely and fraudulenly represented to the court that certain moneys theretofore paid out and expended were due and owing to the Fair Fund and should be credited to such Fund, and that by reason of such false and fraudulent representations, the petitioners and their attorneys procured the judgment which was rendered on April 19, 1938. "That the said judgment is contrary to law and fact, is and constitutes and operates as a fraud upon the applicants herein and other taxpayers of Ward County; and was made, given and entered by this court under a mistake of fact and law, and by reason of the false and fraudulent representations made to this court by the petitioners and their said attorneys."

The rule supported by the overwhelming weight of authority is that fraud as a ground for vacating a judgment "must be what is known as 'extrinsic' fraud, that is, fraud in the means whereby the judgment was procured, and not fraud in the cause of action or matter put in issue and presented for adjudication." 1 Freeman, Judgments, 5th ed, pp. 461, 462; 31 Am Jur pp. 230, 231, Judgments.

In this case there is no claim that there was any collusion between the petitioners and the respondent. The alleged wrongful scheme is charged to the petitioners and their attorneys. There is no claim that the respondent county auditor was in any manner a party to the alleged wrongful conduct, or that he did not in good faith defend in the proceeding. On the contrary, according to the memorandum opinion of the trial court, on the hearing of the motion, counsel for the moving taxpayers conceded that the respondent county auditor "honestly and in good faith defended the action, and was represented by able counsel." There is nothing to show, and there is no basis in the record for any claim, that the respondent was misled as to the facts or the law, or that anything was done to prevent him from introducing any evidence which he had to offer, nor is there anything to show that he did not do so. As said, it was conceded in the trial court that the county auditor honestly and in good faith made defense, and that he was represented by able counsel. There is no showing as to what occurred at the trial, except as it may be gathered from the findings

and the trial court's memorandum opinion. The moving taxpayers in their affidavits say that they "had no knowledge of, and did not learn of the matters and things herein set forth, other and except that the proceedings herein were instituted, a hearing was had therein, and the judgment was made, given and entered, until about December, 1939."

In its final analysis the claim of the moving taxpayers is that the allegations in the application for the writ of mandamus were untrue, and that the facts and the law did not warrant the judgment which the trial court rendered. The fact that the petitioners alleged the facts to be different from those which the moving parties claim they were, and that the trial court found the facts and the law to be different from what the counsel for the moving parties and the moving parties assert them to be does not establish fraud, either extrinsic or intrinsic. The moving parties had the burden of proving fraud by clear and convincing evidence. The presumption is there was no fraud, and that official duty has been regularly performed. The charge is made in the affidavit that not only the petitioners, but their predecessors in office have expended county funds for county fair purposes that were not available for such purposes. This practice is charged to have been carried on from 1922 to 1938. During all of this time the laws of the state provided for an examination by the state examiner at least once a year, of the books and accounts of the county officers, including the county treasurer and the county auditor (Comp. Laws 1913, § 225; Laws 1933, chap. 71, § 15). And it was made "the duty of the state examiner to order and enforce a correct, and, as far as practicable, uniform system of bookkeeping by . . . county treasurers and auditors so as to afford a suitable check upon their mutual actions and insure a thorough supervision and the safety of the . . . county funds." He was given "full authority to expose false and erroneous systems of accounting, and when necessary instruct or cause to be instructed the . . . county officers." It was made his duty to "require county treasurers as often as he shall deem necessary to make verified statements of their accounts, and . . . personally, or by deputy, visit said offices without previous notice to such treasurers, at irregular periods, of at least once a year, or when requested by any

board of county commissioners, and make a thorough examination of the books, accounts and vouchers of such officers, ascertaining in detail the various items of receipts and expenditures." He was required to report to the attorney-general "the refusal of any . . . county officer to obey his instructions," and it was made the duty of the attorney-general "promptly to take action to enforce compliance;" and the state examiner was required to "report to the governor the result of his examination, which shall be filed in the executive office." Comp. Laws 1913, § 227; Laws 1933, chap. 71, § 17.

The presumption is that the county and state officers performed their duties as prescribed by law; that the mandamus proceeding was instituted, tried and determined in accordance with the law, and that the judgment is in accord with the law and the facts.

In any view of the case the application to set aside the judgment was addressed to the sound judicial discretion of the district court (Guenther v. Funk, 67 ND 543, 274 NW 839, 112 ALR 428), and the applicants had the burden of establishing the charge of fraud by clear and convincing evidence.

The record presented on this appeal fully sustains the conclusion reached by the trial court, and stated in his memorandum opinion: "The evidence does not support the charge of fraud and collusion. It is, therefore, my duty to deny the motion."

Order affirmed.

BURR, Ch. J., and MORRIS, BURKE, and NUESSLE, JJ., concur.