357 P.2d 139

C. A. McCARRELL, a single man, Spencer Balcomb and Donna Balcomb, his wife, Appellants,

v.

STATE of Arizona ex rel. Robert MORRISON, Attorney General, Appellees.

No. 6780.

Supreme Court of Arizona.

Nov. 23, 1960.

Earl Platt, St. Johns, for appellants.

Robert Morrison, former Atty. Gen., Wade Church, present Atty. Gen., Leslie C. Hardy, Chief Asst. Atty. Gen., James A. Yankee, Sp. Asst. Atty. Gen., for appellees.

PHELPS, Justice.

This case came to us on appeal from a judgment of the superior court of Apache County. Appellants will be hereinafter designated as defendants and appellees as plaintiffs.

The facts are that in 1934 the Arizona State Highway Department leased a small tract of land from one Spencer Balcomb, Sr., located at Sanders, Arizona, several miles east of Holbrook, Apache County, alongside the Santa Fe Railroad right of way. It occupied said land as lessee using it for a highway maintenance camp until 1944. The State of Arizona by and through the Highway Department then purchased said land together with an additional area adjacent thereto making a total of approximately five acres. The State Highway Department has placed improvements on said

land of the approximate value of $10,000. Some of these improvements were placed upon the leased property prior to 1944 and some afterwards. The Highway Department has been at all times and is now in possession thereof.

The land was purchased by plaintiff in 1944 from R. G. Lewis and Bertha Lee Lewis, his wife, and R. P. Degraftenreid and Hattie Helen Degraftenreid, his wife, who on May 5, 1944 executed a warranty deed to the State describing said property by metes and bounds. The deed made no reference to any governmental surveys except to state that it was a part of the northeast quarter of the southeast quarter and the northwest quarter of the southeast quarter of Section 14, Township 21 north, Range 28 East G&SRB&M in Apache County, Arizona. It also described it as lying northerly and adjacent to the A T & S F Railroad right of way.

Defendants at least as early as 1949 notified the Highway Department that a portion of the land occupied by it and described in the above-named deed, belonged to them and from time to time until January 1954 sought an adjustment with the Highway Department relating thereto. Finally, on February 1, 1954, upon advice of the deputy Attorney General assigned to the Highway Department, the State Highway Commission by a vote of 3 to 1 decided no adjustment would be made with defendants. The minute entry of the Commission shows that its decision was based upon the advice of the deputy Attorney General to the effect that clear title to the property in controversy was in the State. Commissioner Calhoun was absent and Commissioner Scott, chairman of the Commission, cast the negative vote on the motion presented. On the same date chairman Scott wrote a letter to defendant McCarrell advising him of the action taken by the Commission. Mr. Platt testified that he received the same information by telephone and upon request later received a copy of the minutes of the Commission from Scott recording the action taken by it relating to the area in dispute. This action, in effect, definitely terminated all negotiations looking toward a settlement of the title dispute concerning said land occupied by plaintiff.

Thereafter these defendants brought an action against the State to quiet title to the area in controversy. At the time of filing their quiet title action service of process was made upon the Attorney General. Upon receiving the same that office, through one of its deputies, referred the matter to the State Land Department who informed the Attorney General that the State had no interest in the land involved. The deputy thereupon on April 19, for some reason, advised the county attorney of Apache County, in substance, that the State Land Department had advised the Attorney General's office there was no state land involved in the land described in the complaint and

asked him to appear and answer for the State. A copy of this letter was sent to Platt and Greer, counsel for McCarrell and Balcomb. Apache County was not a party to the litigation and the county attorney did not file an answer for the State. Just why the deputy Attorney General did not notify the State Highway Department instead of the State Land Department was not explained, perhaps because it was inexplainable. The complaint itself alleged that the land was owned by the State and occupied by the State Highway Department. On May 7, 1954, default was entered against the State and on June 7, 1954, defendants put on their evidence in a trial before the judge sitting without a jury. At the close of the trial judgment was entered quieting title in McCarrell and Balcomb.

Before entering default against the State, Mr. Platt made a trip to Show Low around the first week in May to see chairman Scott who resided there. He went to see him about this matter and other business. He told Scott about the letter from the Attorney General stating that according to advice from the State Land Department the State had no interest in the land involved in the quiet title action. He told Scott he was surprised and informed him that the time was up or about up for filing an answer. He further told Scott they were in no hurry to take judgment and that no default had been taken but that his clients were interested in doing some building on the property. He

stated Scott seemed a little puzzled and said maybe the Attorney General had decided they did not have a case. After they finished their other business he returned to St. Johns. Mr. Platt testified he heard nothing further from anyone.

The Highway Commission had no actual official knowledge that the quiet title action had been filed against the State involving the property in controversy in this case until January 31, 1955. On that date, Mr. Platt, attorney for McCarrell and Balcomb, wrote the Commission that he had taken a judgment against the State on the previous June 7 and asked if it would be necessary for him to procure a writ of restitution in order to get possession. He also stated in that letter that the Commission was at liberty to remove three residence buildings located on the property if it was done in time to not interfere with the building program of McCarrell and Balcomb. The State did not accept this offer but instead appealed from said judgment.

The appeal was based upon the ground that the service upon the Attorney General was not a valid service upon the State. In our opinion handed down April 17, 1956, in the case of State v. McCarrell, 80 Ariz. 240, 295 P.2d 1086, we held that the service of process in that case was properly served upon the Attorney General under the provisions of Section 27–1401 A.C.A.1939 (now A.R.S. § 12–1101), and affirmed the judgment of the trial court.

On May 21, 1955, the plaintiff State of Arizona ex rel. Robert Morrison, Attorney General, filed the instant cause of action against McCarrell and Balcomb alleging, among other things, that their counsel, Mr. Platt, had been guilty of extrinsic fraud in procuring the judgment by default by concealing from the trial judge the fact that the State Highway Commission had advised his clients that they claimed to have a clear title to all the land occupied by the highway camp at Sanders and would not accede to his demands for a correction of the description of the land to conform with his wishes. Other allegations are to the effect that the State Highway Commission is vested by law with exclusive authority to dispose of property acquired, used and administered by the Highway Department; That there is no statutory or inherent power in the Attorney General to dispose of or abandon title to property belonging to the State; That both counsel for the defendants in this case and the deputies of the Attorney General assigned to the Highway Department before, and at the time of trial on June 7, 1954, well knew there was no act, purpose or intention on the part of the Highway Commission to give up or abandon the right, title or interest of the State in the maintenance camp at Sanders.

It was further alleged that immediately after the action of the Commission to contest the claim of McCarrell and Balcomb to title to any part of said maintenance camp, the deputy Attorney General assigned to the Highway Department began to prepare to answer any suit that might be filed by defendants and obtained statements of Mr. Lewis, one of the grantors in the deed of conveyance, concerning the land intended to be conveyed by him and which was conveyed. Upon motion of defendant said cause of action was dismissed upon the ground that the complaint did not state a cause of action and judgment was entered thereon for defendant. The State appealed from said judgment and in State v. McCarrell reported in 80 Ariz. 243, 295 P.2d 1088, we held the complaint did state a claim against defendant and reversed the case and remanded it to the trial court with directions to reinstate the complaint.

Thereafter, as above stated, a trial was had to the court sitting without a jury. It made findings of fact and conclusions of law and entered judgment for the State. It is from this judgment that this appeal was taken.

 Counsel has presented seven assignments of error for our consideration. But we believe none of them merit more than casual attention except those relating to the sufficiency of the evidence upon which to find extrinsic fraud in the trial of June 7, 1954. The gravamen of the action is based upon that ground. If the evidence is insufficient to justify a finding of extrinsic fraud in this case the judgment must be reversed. If it is sufficient to sus-

tain that charge, the judgment must be affirmed. Extrinsic fraud is fraud in the means whereby the judgment is procured and not fraud in the cause of action or matter put in issue and presented for adjudication. Jacobson v. Brey, 72 N.D. 269, 6 N. W.2d 269; Deyl v. Deyl, 88 Cal.App.2d 536, 199 P.2d 424, 426.

The evidence is undisputed that both defendant McCarrell and counsel had received advice from chairman Scott of the Highway Commission that the Commission on February 1, 1954, had voted 3 to 1 that the Commission accept the recommendations of their attorney "to sit tight" on their position that the State had a clear title to the land on which the state highway maintenance camp was located at Sanders. This meant that it would not yield to the demand of defendants that the deed there be corrected to conform with their demands.

The specific charge of extrinsic fraud is that Earl Platt, one of the counsel for McCarrell in that case, concealed facts from the trial judge well known to himself and to the attorneys for the State Highway Department that the State Highway Commission claimed title to the land in controversy and therefore intended to answer his complaint, and that the judge acted without full knowledge of the State's title and interest in the maintenance camp because of counsel's action.

Mr. Platt took the witness stand in the instant case and testified concerning his conduct in the trial resulting in the default judgment in question. He stated that he was notified by Mr. Scott, he thought, by telephone that the Attorney General had recommended against any kind of settlement; that at his request Mr. Scott sent him a copy of the minutes of the Commission at which such action was taken. He stated that Mr. Weeks, the deputy Attorney General representing the State Highway Department, had promised to send him a copy of the opinion he gave to the Commission but he never received it.

He further testified that this matter being a default he went to the judge's chambers and presented him with the file. He proceeded:

"I told him there had been negotiations over a period of years with the Highway Department to settle the matter: I told him of the meeting and our recent efforts to settle the matter, and they had apparently failed, and we had a copy of this letter which had been addressed to us, this letter of April 19th, which I am sure is the copy which is in the file now as Exhibit No. 1 on a subsequent motion filed in this action; * * * and in order to present to Judge the original letter, all we had was a carbon. I believe Mr. Greer went into Mr. Whiting's office (the county attorney) and I think Mr. Whiting brought

the letter into chambers and dropped it on the judge's desk and he read it and handed it back to Mr. Whiting.

"I then told the Judge that I had talked to Mr. Scott some time before and told him the action was pending and that the State was in default and that it had been some weeks since I had done that, we had heard nothing from any one and I assumed that the State intended to default as indicated."

Mr. Platt then testified in substance that he put in every bit of evidence they had with reference to the title to this property. The deed to the State describing the property conveyed is in evidence. Surveys are in evidence by different engineers including a Mr. Shepherd who had been employed by the State as such for thirty years before his retirement ten years before the trial.

He further testified to the effect that when he failed to get a copy of the opinion of Deputy Attorney General Weeks to the Commission concerning the land involved and received a letter from Deputy Attorney General Pickrell stating that there was no state land involved in the quiet title action he assumed that Mr. Weeks had been replaced by Mr. Pickrell. He mentioned that over the years he had dealt not only with Mr. Weeks and Mr. Bond but also with Mr. Langmade, a former Deputy Attorney General. He testified that Mr. Scott told him on one occasion they never knew from one week to the next who their attorney would be.

It is unfortunate that the State is placed in a position where it must sustain a loss which, as we see it, must be rightfully placed at the door of officers of the State rather than upon counsel for defendants. In the first place counsel properly served process upon the Attorney General, see State v. McCarrell, supra. Secondly, he notified the chairman of the Commission that an action for quieting title in McCarrell and Balcomb was pending and that time for filing default was due or about due. Mr. Scott apparently never notified either the members of the Commission or Mr. Weeks, attorney for the Commission, that such an action was pending. Furthermore, the judge ordered the clerk of the court to notify the Attorney General that judgment had been entered that day and Mr. Heap, the clerk, testified that he mailed such a letter to that office. If the office of the Attorney General had given this information to the attorney representing the Highway Commission he no doubt would have taken immediate steps to have the judgment set aside and we are sure he would have been successful under the circumstances of this case.

■ Under the facts related above as disclosed by the evidence, we are of the view that the evidence relating to the conduct of Mr. Platt in representing the interest of his clients fails to support the allegation that he was guilty of fraud in concealing from the court facts which either the law or the Canon of Ethics of the American

Bar Association requires that he should disclose. It is true that an attorney must at all times exercise the utmost good faith both to his client and in his dealings with opposing counsel as well as to the court. However, we feel that we would be treading upon dangerous grounds to require counsel in this case to do more than he did do to protect the interest of his adversary in order to avoid a charge of extrinsic fraud in procuring his judgment. The State, as a party litigant here, is entitled to no greater consideration than would an individual have been if similarly situated.

Judgment reversed.

STRUCKMEYER, C. J., and BERNSTEIN and LESHER, JJ., concur.