WILLIAM GOLD, JR., *v*. VERMONT CENTRAL RAIL ROAD COMPANY.

The provision in the charter of the Vermont Central Rail Road Company, which authorizes a person, whose land has been taken for the use of the Company, and who feels aggrieved by the appraisal of the damages by the commissioners appointed in pursuance of the charter, to appeal to the county court, and which provides that the decision of the county court shall be final in the matter, does not entitle the person thus appealing to have his damages assessed in the county court by a jury.

The term "Court" may be construed to mean the *judges* of the court, or to include the *judges and jury*, according to the connection and the object of

Gold *v*. Vt. Central Rail Road Co.

its use. Resort must be had, for the purpose of determining the form of trial, where there is no express legislative provision, other than the use of the general term, to the nature of the question submitted to the court, and the mode, heretofore in use, of determining similar questions.

In cases analogous to those where land has been taken by a rail road corporation, pursuant to the provisions of their charter, it has never been the practice in this state, where the matter has been pending in the county court, to assess the damages by a jury,—but by commissioners, or perhaps by the judges of the court.

The statute of November 2, 1846, which provides, that, when it becomes necessary to assess damages, *and no other provisions are made by law* for such assessment, the same shall be assessed by a jury upon the request of either party, does not entitle a person, whose land has been taken by the Vermont Central Rail Road Company, and who has appealed from the appraisal of his damages by the commissioners appointed under the charter, to have his damages assessed by a jury in the county court;—since the general terms used in the charter of the company must be construed to have provided, that the damages, in such cases, should be assessed in the mode usual in this State in analogous cases, which is by the appointment of commissioners by the county court, or perhaps by the judges of the court,—but never by a jury.

PETITION for a writ of mandamus. The petitioner set forth, that certain of his land had been taken by the Vermont Central Rail Road Company, for the purpose of building their road; that the commissioners, appointed in pursuance of the provisions of the charter of the Company, had appraised his damages at sixty five dollars; that, feeling aggrieved by this decision, he had appealed to the county court and had filed in that court a motion in writing, to be allowed to have his damages assessed by a jury; and that the county court had refused to allow the same, but had proceeded to assess his damages by the judges of the court;—and he prayed, that a writ of mandamus might issue, directed to the county court, and commanding them to grant to him a trial by jury for the assessment of his damages.

*J. L. Buck* for petitioner.

1. We insist, that the constitution and laws of this state, as well as the settled practice under them, give the petitioner a right of trial by jury, unless it is taken away by the charter of the company. The

true interpretation of the 15th Article of the Constitution is, that when any question of fact, to be decided upon the testimony of witnesses, is raised, or presented, the parties have a right to a jury trial. 3 Pet. 446. 1 D. Ch. 247. We deny, that the act of incorporation prescribes the *mode* of trial. The eighth section declares, " that the decision of the county court shall be final; "—but it is not declared, whether the trial shall be had or the damages assessed by the judges, or by the jury. It might as well be claimed, that the judges should try all civil suits; for the statute, in defining the jurisdiction of the county court, is entirely silent upon the subject of a jury. Rev. St. 160, § 7.

2. The statute of November 5, 1846, upon the subject of the appraisement of damages, is applicable to this case, and was intended by the legislature to embrace such cases. The act of incorporation does not prescribe the mode of trial; and no rights can be claimed by the company, except such as are given by its charter, or are incident to its existence. Ang. & Am. on Corp. 2. 5 Conn. 560. The forms of administering justice and the powers of courts must ever be subject to legislative enactment. *Bank of Columbia* v. *Okely*, 4 Wheat. 235. *Young* v. *Bank of Alexandria*, 4 Cranch 384. *Mc Laren* v. *Pennington*, 1 Paige 107.

*L. B. Peck* for defendants.

1. By the act of incorporation the damages, on an appeal, are to be determined by the court. The eighth section provides, that either party may appeal from the decision of the commisioners to the county court, " and the decision of such court shall be *final.*" If the jury fix the amount of damages, the court do not pass on the question; for it will not be insisted, that the court can change the verdict. The term " county court, " as here used, must mean that tribunal which is described as such in the constitution and laws of the State. The third section of chap. 25 of the Revised Statutes provides, that "there shall be, in each county, a *county court*, to consist of one chief judge, " &c., "and two assistant judges, to be appointed for each county ;" and when the act of incorporation provides, that the party may appeal to the " county court, " and that the decision of *such* court shall be *final*, it must mean that tribunal above described, composed of a judge of the supreme court and two assistant

judges. From the whole structure and language of this chapter it is evident, that these judges are the "county court;" p. 161, §§ 11–13; p. 164, § 36. It has been the uniform practice in this state, in all cases where damages were claimed by land owners for the location of turnpikes and common highways over their lands, to have them assessed by committees appointed by the legislature, or by some judicial tribunal. It is fair to presume, that, if the legislature had intended, in the present case, to change this practice and provide for the assessment of damages by a jury, they would have used language, which could leave no reasonable doubt of that intention. The whole legislation in this state, in reference to this subject, and those of a kindred character, shows that the whole matter has been studiously excluded from the consideration of a jury. Acts of 1794, p. 26, § 3. Acts of 1803, p. 129, § 2.

2. But the party claims, that he is entitled to a jury trial by the constitution. That article in the constitution, upon which he relies, has no application to this case. It has reference to an issue of fact, joined in a cause or proceeding known to the common law. The proceeding in this case is not known to the common law. It is a proceeding created by statute only. The case of *Huntington* v. *Bishop*, 5 Vt. 186, is decisive of this question. See, also, *Beekman* v. *Saratoga R. R. Co.*, 3 Paige 45; *Backus* v. *Lebanon*, 11 N. H. 19.

3. The statute of November 2, 1846, does not affect the present question. That statute applies only to those cases, where no mode for assessing damages is prescribed. The act of incorporation has made provision "for such assessment." And in any view that can be taken of this statute, the question must rest upon and be determined by the provisions of the act of incorporation. 3 Vt. 507. 2 D. Ch. 77. Stamford v. Barre, 1 Aik. 321. 1 N. H. 199.

The opinion of the court was delivered by

Davis, J. This is an application to this court by William Gold, Jr., for a writ of mandamus, to be directed to the county court for the county of Washington, setting forth, substantially, that the Vermont Central Rail Road Company have located their road through the petitioner's land in Northfield in said county, taking and appropriating for that purpose about four acres and thirteen square rods;

that, the parties failing to agree upon the price of said land, these commissioners, duly appointed in pursuance of the act incorporating said company, assessed the petitioner's damages at the sum of $65,—from which assessment, being aggrieved thereat, he appealed to the county court, and duly entered his appeal at the term of said court holden at Montpelier in November, 1846; that at the same term he filed a motion in writing, requesting the court to direct that his damages should be assessed by a jury, duly impannelled,—which request said court declined to grant; but, on the contrary, proceeded to assess such damages by the judges of said court, and did assess them at the sum of ———. The petitioner thereupon, believing this proceeding of the county court to be a violation of his legal rights, prefers this petition to this court,—notice of which having been duly served upon the Rail Road Company, they appear by attorney to resist the application.

Practically the question may be considered one of considerable importance; and it has undergone a full discussion at the bar, by the counsel of the respective parties. No question is made with respect to the power of this court to issue such a writ, in a case of this kind, directed to the county court, provided the ground assumed by the petitioner be correct, as to his right to insist on having his damages ascertained in that mode. We shall therefore consider the case as involving that question alone.

We are not disposed to attach any importance to the peculiar phraseology of the act of incorporation, authorizing the *county court* to decide finally upon appeal. The term *"court"* may be construed to include a jury, as well as judges and a clerk, or as used in contradistinction from a jury, according to the connection and object of its use. When the statute speaks of the county court generally, its powers and jurisdiction, it is to be understood in the former sense. When it authorizes the court, upon the agreement of parties, to try issues of fact, it is to be understood in the latter sense.

In this case nothing can be predicated, as to the sense in which the term "court" is to be used, from the mere language and connection. Resort must be had, for that purpose, to the nature of the question submitted to the county court, and to the mode of determining similar questions heretofore in use. If any uniform mode exists, which has been recognized since the establishment of a judi-

ciary in the state, it will be a reasonable presumption, that, in the absence of any express provision to the contrary, the legislature intended that the same mode should continue to be pursued.

No matter precisely similar has heretofore been brought under cognizance of the courts. Rail road corporations are new bodies with us; and the taking and holding another's land *in invitum*, for the purpose of constructing such roads, is a novel proceeding, now for the first time authorized by our laws. Easements for the use of turnpike corporations, and for common roads, have, however, long been established, upon a compensation rendered; and the mode of ascertaining the compensation to be paid in such cases would seem, from the close analogy in the subjects, the proper one to be applied here. What, then, has been that mode? By commissioners, by committee-men, by appraisers, and perhaps by the county court judges,—but never by a jury. It has not been hitherto supposed, that it was a subject coming within the scope of the appropriate duties of a traverse jury. The issue to be tried, if it can, with any propriety, be called such, is altogether unlike that presented by the counter allegations between party and party, in which the truth of the facts in controversy is to be ascertained. The duty imposed is rather one of appraisement merely. As such, it appropriately belongs to one man, or a board of competent men, qualified properly to discharge it.

This view of the subject necessarily leads us to the conclusion, that the legislature, in transferring to the county court, upon the dissatisfaction of either party at the decision of the commissioners, the appraisement of damages in cases under this act, intended that the question should be tried without the intervention of a jury. If any innovation had been intended, it would doubtless have been indicated in express terms.

A similar view was taken by the supreme court of New Hampshire, in *Backus v. Lebanon*, 11 N. H. 20, in which case a turnpike corporation claimed to have the damages, occasioned by an appropriation of a portion of their road to the purposes of a free road, assessed by a jury. Chief Justice PARKER, in denying the application, observed, "that, by a long course of legislation, the damages occasioned by the laying out of highways were to be assessed by the court, or by a committee; and no provision is found

for the intervention of a jury in cases of that character." The same remark is equally applicable to our own legislation.

On similar grounds the chancellor of New York, in *Beekman* v. *S. R. R. Co.*, 3 Paige 45, determined, that a legislative provision for the ascertainment of damages, on laying a rail road by a committee was not an infringement of the right of trial by jury, guaranteed by the constitution.

The case under consideration is, in fact, in another particular, stronger than the ordinary one of laying out highways. Here the fee of the land is taken and paid for,—whether with a reversionary right to the former proprietor, on the extinguishment of the corporation, it is not necessary now to consider ; and the question is simply one involving an appraisement of the value of the land,—taking into view, indeed, the uses to which it is to be applied. It was competent for the legislature to provide, that this revision of the primary appraisement should be made by the county court judges, or supreme court judges, or by a jury, or by another board of commissioners. No doubt the tendency of our legislation is in favor of extending the scope of the duties of traverse juries. County courts have been invested with a discretionary power to grant jury trials in trustee proceedings; and such mode of trial is now, in some cases, made imperative, on the request of either party, when before it was matter of discretion. A similar tendency may be discovered in the legislation of the general government, in a provision contained in the late bankrupt act, authorizing jury trials in certain cases under the act.

It only remains to be considered, whether the statute of November 2, 1846, can be considered as in any manner affecting this question. We are all agreed, that it does not. It simply provides, that in any *case* then pending, or which might afterwards occur, when it should become necessary to assess damages, *when no other provisions by law are made* for such assessment, the same shall be assessed by a jury, on the request of either party. Now, not to place any stress upon the word *case*, as here used,—for perhaps that term may as well comprehend this proceeding, as an ordinary common law suit,—and in common parlance it has a more extended meaning than the word *suit*, or *action*, and may include application for divorce, applications for the establishment of high ways,

applications for orders of support of relatives, and other special proceedings unknown to the common law,—yet if the views already expressed are well founded, there was no absence of provision by law for the assessment of damages in this case, already provided. The act of incorporation expressly provides it, in requiring the county court to perform that duty,— construing the language of the act, as we have done, to require it to be done in those modes only heretofore known and practiced.

The result is, the application for a mandamus must be denied, with costs.