## ˙ HENGST v. BURNETT.

### No. 3788.    Opinion Filed October 14, 1913.

(135 Pac. 1062.)

1.　**JUDGES—Disqualification—"Party."**　In a proceeding in the county court by a guardian to invest the money of his ward pursuant to Comp. Laws 1909, sec. 5513 (Rev. Laws 1910, sec. 6569), held, construing Comp. Laws 1909, sec. 5139, that the guardian is a "party" thereto within the contemplation of said section, and that the judge of the county court, his brother-in-law, was disqualified to sit in said proceeding.

2.　**SAME—Judge Pro Tempore.**　Comp. Laws 1909, sec. 2013 (Rev. Laws 1910, sec. 5813), when construed with Constitution, art. 7, sec. 12, provides for a judge pro tempore in a special proceeding.

(Syllabus by the Court.)

*Error from District Court, Creek County;*
*Wade S. Stanfield, Judge.*

Petition by Bates B. Burnett, as guardian, etc., for an order to sell certain property, and from the judgment Charles Augustus Hengst, etc., brings error. Reversed.

*Geo. L. Burke, W. Morris Harrison,* and *F. L. Mars,* for plaintiff in error.

*Josiah G. Davis, Rutherford & Lawrence, Thompson & Smith,* and *James J. Mars,* for defendant in error.

· TURNER, J.　On January 7, 1911, pursuant to the prayer of the petition of Bates B. Burnett, as guardian of Charles Augustus Hengst, the county court of Creek county appointed three appraisers who appraised certain property at $7,200, whereupon the court entered an order authorizing said guardian to invest

that amount of the funds of the ward in the purchase of said property, consisting of block 9 in Burnett's addition to the city of Sapulpa in Creek county, which was done `and the purchase approved. On January 14, 1911, came William C. Hengst, as father and next friend of said minor and a person aggrieved, and represented to the court, among other things, that the property was not worth the money and prayed and was granted an appeal from the order approving the purchase to the district court of that county. There, by stipulation of counsel, it was agreed that Josiah G. Davis, who was judge of the county court and who sat throughout the proceedings and approved the orders aforesaid, was a brother-in-law of said guardian, and the question of law raised was whether such relation disqualified him to sit in the proceedings. The court held that such relation did not disqualify him and rendered and entered judgment affirming his action. To reverse which this proceeding in error was commenced by the father, as next friend.

The court erred, for the reason that the guardian was a "party" to the proceeding, within the contemplation of the governing statute (Comp. Laws 1909, sec. 2012 [Rev. Laws 1910, sec. 5812]), which reads:

"No judge of any court of record shall sit in any cause or proceeding in which he may be * * * related to any party to said cause within the fourth degree of consanguinity or affinity, .* * * without the consent of the parties to said action entered of record: Provided. * * *"

17 Am. & Eng. En. of Law, p. 736, says:

"It is a general if not a universal provision of the statutes prescribing the grounds upon which a judge may be disqualified that relationship of the judge to a party in a cause will operate to disqualify him from sitting as judge in such cause. * * *"

. And on the next page:

"The cases construing the various statutory provisions disqualifying for relationship to a 'party' are not uniform, some confining their application to actual parties, while others are much broader in their construction."

Without declaring in favor of either construction, if the guardian in this instance was not a party to his own petition, then we have the anomalous condition of a proceeding in pro-

bate without a party to it. Such he is denominated by the statute authorizing him to conduct the proceeding and such we hold him to be. Comp. Laws 1909, after providing in section 5513 (Rev. Laws 1910, sec. 6569) :

"The county court, on the application of a guardian or any person interested in the estate of any ward, after such notice to persons interested therein as the judge shall direct, may authorize and require the guardian to invest the proceeds of sales, and any other of his ward's money in his hands, in real estate * * *"

—in section 5451 provides:

"An appeal may be taken to the district court from a judgment, decree or order of the county court: * * * (8) From any judgment, decree or order of the county court, or of the judge thereof affecting a substantial right * * *"

And, after providing in the next section· that any party aggrieved may appeal, it is provided in the next that:

"A person interested in the estate or funds affected by the decree or order, who was not a party to the special proceedings in which it was made, but who was entitled by law to be heard therein, upon his application * * * may also appeal as prescribed in this article."

Thereby denominating those in interest in the proceeding *parties* and *persons interested.* For in the next section it expressly provides a different time in which an appeal by a party, as distinguished from a person interested,. must be taken. It is clear that this guardian is in the former class and the father in the latter. Carrying out this idea to fit a case where, as here, the appeal is to the district court, section 5464 provides that the plaintiff in the county court shall be the plaintiff in the district court, which means that this guardian, whose petition moved the court to enter the order appealed from, was plaintiff there and also in the district court to which the order was appealed and where the proceedings became adversary. Being appealed upon both questions of law and fact, the next section (5465) provides that the trial in the district court must be *de novo* "and shall be conducted in the same manner as if the case and proceedings had lawfully originated in that court," with power in the court to impanel a jury. It is clear that, when this proceeding reached

the district court, this guardian was by statute the plaintiff, and to all intents and purposes the father was the defendant.

Being denominated by statute the plaintiff, he was of course the party plaintiff, or, in other words, a party to the proceeding. This was substantially the situation in *Rivenburgh v. Henness et al.,* 4 Lans. (N. Y.) 208, where the court held that the overseer of the poor was a party in bastardy proceedings. The action was one for false imprisonment in committing plaintiff to jail in bastardy proceedings. The facts were that Specherman, as overseer of the poor, commenced and conducted such proceedings before a certain justice of the peace who was his son-in-law and whose wife was then living. The plaintiff claimed that said affinity between Specherman and the justice made the proceedings void, and that was the holding of the lower court. The governing statute there provided that "no judge of any court can sit as such in any cause  *  *  *    in which he would be excluded from being a juror by reason of consanguinity or affinity to either of the parties." The question was whether Specherman, as overseer of the poor, and who instituted the bastardy proceedings, was a party within the contemplation of that statute. In order to determine the question the court turned to the statute authorizing the proceedings and said:

"The overseer is to apply to the justice to make inquiry (section 5), and without his application the justice cannot act. *Wallsworth v. McCullough,* 10 John. (N. Y.) 93; *Sprague v. Eccleston,* 1 Lans. (N. Y.) 74. His application is necessary to give the justice jurisdiction of the matter. He may offer testimony on the preliminary hearing. Section 6. He may appear on the trial before the justices in behalf of the public. Section 11. When the justices shall have made an order, any person who shall think himself aggrieved may appeal. Section 24. The court to which such appeal may be made shall proceed to hear the allegations and proofs of the respective parties, and the party in whose favor any order was made, which shall be the subject of appeal, shall be required to substantiate the same by evidence. Section 28. As it has been held that an appeal does not lie in favor of the overseer (*People v. Tompkins Sessions,* 19 Wend. [N. Y.] 154), it follows that the words 'the party in whose favor an order was made,' must apply to the overseer and to him exclusively. Thus the statute, in express words,

denominates the overseer of the poor a party, and a party in whose favor an order may be made. In the case of *Stowell v. Overseers,* 5 Denio (N. Y.) 98, it was held incidentally that the overseer could discontinue the proceedings pending an appeal; and the court speak of the proceedings as a suit discontinued by the plaintiff. See 5 Denio, 101. The overseer, therefore, has the power to discontinue the proceedings as well as institute them. In section 37 the court is authorized to award costs to the party in whose favor any such appeal shall be determined and to any party to whom notice of appeal shall be given and not prosecuted. The party to whom notice of appeal shall be given is the overseer. Thus we see that the statute in several places denominated the overseer a party; that he has power (and he alone) to institute the proceedings, to adduce testimony, to appear on the trial, to have notice of an appeal, to discontinue the proceedings, even after an appeal, to recover costs of an appeal; and that he is liable to have costs recovered against him. These rights and powers bring him clearly within the definition of a party. 1 Green. Ev. sec. 523."

And in the syllabus said:

"Where an overseer of the poor commenced bastardy proceedings before a justice of the peace, who was his son-in-law, and whose wife was still living, and this justice associated another with himself, and after the usual proceedings the justice made an order of filiation and for the neglect of the party charged to comply with the same committed him to jail, *held,* that the overseer was a party to the proceedings in such sense that the proceedings were void and the justices liable to an action for false imprisonment."

The object of this statute undoubtedly was to so disassociate the judge, while sitting as a court, from the affairs of his relatives as to avoid even the appearance of evil. It is our duty in construing this statute to do so liberally so as to effect that object and promote justice and thereby enforce the maxim that no man shall sit in judgment on his own case or that of his close kin. We will therefore not be astute in finding reasons to avoid the spirit of the statute by refining on the word "party," as we are asked to do, but will interpret it as indicated by Justice Graves when in *Stockwell v. Township Board, etc.,* 22 Mich. 341, he said:

"The court might not be astute to discover refined and subtle distinctions to save a case from the operation of the maxim,

when the principle it embodies bespeaks the propriety of its application."

There is no merit in the contention that there is no provision for a judge *pro tempore,* and hence the rule of necessity applies and the disqualified judge was bound to sit. This is the reason that such provision exists.

Constitution, art. 7, sec. 12, provides:

"When the county judge is disqualified in any case pending in the county court, a judge *pro tempore* may be selected in the manner provided for the selection of judges *pro tempore* in the district court."

Prescribing the manner of selection in the district court, Comp. Laws 1909, sec. 2013 (Rev. Laws 1910, sec. 5813), provides:

"In any cause, civil or criminal, pending in any court of record in this state, if the presiding judge for any legal cause shall be incompetent or disqualified to try, hear or render judgment in such cause, the parties or their attorneys of record, if it be a civil cause, or the prosecuting officer and the defendant or defendants or their attorneys of record, if it be a criminal cause, may agree upon some member of the bar of the district, who is not disqualified if it be in the district court, or of the county, if it be in the county or superior court, and if in any other court of record within its jurisdiction, to act as special judge to hear and decide and render judgment in the same manner and to the same effect as such disqualified judge could have rendered but for his disqualification."

Neither will we refine upon the word "case," as used in said section of the Constitution, in favor of the contention that a case is a "cause" or an "action" and has no reference to a special proceeding. Rather will we construe the word liberally, with a view to furnishing a remedy rather than defeating one, and hold, as we do, that the same is intended, when used in this connection, to cover a special proceeding. In *Sease v. Dobson et al.,* 36 S. C. 554, 15 S. E. 703, 704, the question before the court was whether the prevailing party on appeal in a special proceeding was entitled to the Supreme Court fee of fifteen cents allowed by Gen. Stat. secs. 2425-2428, "in all classes of cases, legal and equitable"; and it was held that he was, and that

the word "cases" comprehended special proceedings. See, also, *Gold v. Vt. Cent. R. Co.*, 19 Vt. 478; Words and Phrases, p. 991.

The judgment of the trial court is reversed.

HAYES, C. J., and LOOFBOURROW, J., concur. KANE and WILLIAMS, JJ., absent and not participating.