BALDWIN v. MAYOR et al.

No. 29354.    Oct. 29, 1940.

Rehearing Denied Dec. 17, 1940.

*108 P. 2d 132.*

R. A. Wilkerson, of Pryor, and J. Cal Counts, of Oklahoma City, for plaintiff in error.

A. C. Brewster, of Pryor, for defendants in error.

DAVISON, J. The plaintiff in error is the former owner of a 210-acre farm in Mayes county that was sold at execution sale to satisfy a laborer's and a materialman's lien.

The foreclosure of said liens was decreed in a judgment rendered by the district court of said county in January, 1935.

Plaintiff in error commenced the present action in April of that year to set aside the judgment and sale; and to cancel the sheriff's deed issued to Oliver D. Mayor and J. H. Mayor, the purchasers at said sale. These purchasers were not parties to the original suit. Before the trial court's hearing upon the merits of the controversy, J. H. Mayor died, and the cause was thereupon revived against his administratrix. At the close of the trial, the court, as authorized by section 189, O. S. 1931, 12 Okla. St. Ann. § 176, "opened" its previous judgment of foreclosure as to the judgment creditors, but refused to set aside the sale it had confirmed almost four years before, or to cancel the sheriff's deed issued soon thereafter. Plaintiff in error's position is that this latter portion of the judgment is erroneous for various reasons. Among others, it is claimed that the price for which the land sold was entirely inadequate, and this, both in itself, and coupled with certain irregularities in the sale proceedings, entitled her to have said sale set aside and the sheriff's deed canceled.

As to the adequacy of the price, our attention has been directed to the trial court's finding that approximately 45 acres of the farm is waste land; to the fact that the farm was appraised at $1,175; that there was approximately $60 in taxes due on it; and that the purchasers paid $850 for the farm, or more than two-thirds of its appraised value;

and to cases as recent as Sharp v. Elsea et al., 180 Okla. 201, 69 P. 2d 55, in support of the trial court's finding affirming the adequacy of the purchase price paid here. Defendants in error further call our attention to the familiar rule that a foreclosure sale will not be set aside on account of the inadequacy of the sale price alone, unless the inadequacy is so gross as to shock the conscience of the court; and to the fact that in this case the trial court specifically concluded that "the price paid * * * was not inadequate to the extent that it would justify the court in setting aside the sale in question. * * *" We have examined the authorities cited by the plaintiff in error and find none of them sufficient to cast any serious question upon the soundness of the latter position. The texts and cases cited by her counsel apply either to other jurisdictions or to decisions upon a motion to confirm such a sale. The applicable rule in this jurisdiction allows the trial court a somewhat wide range of discretion in such matters, and we find the evidence in the present case insufficient to justify us in an unequivocal conclusion that the trial court abused its discretion here; or should have ruled that the price paid for the land involved was, under the circumstances, so low as to shock the judicial conscience.

The plaintiff in error seeks to avoid the effect of the appraised value upon her argument by citing certain testimony she adduced to the effect that this was less than the actual value. If such testimony proved that to be an established fact, she is in no position to take advantage of it at this late hour. As far as the record reveals, she made no timely attack upon the appraisal nor claimed that she learned of it too late to do so. In Rodolf et ux. v. First Nat. Bank & Trust Co. of Tulsa et al., 182 Okla. 426, 78 P. 2d 196, this court held:

"When real property levied upon under mortgage foreclosure is appraised as provided by section 450, O. S. 1931, 12 Okla. St. Ann. § 759, and is sold at not less than two-thirds of the ap-

praised value, the sale is valid, as concerns the question of sale price, *and the court is precluded by force of statute from inquiring into the adequacy of the sale price so long as the appraisement is permitted to stand.*" (Emphasis ours.)

In view of the statutes governing execution sales, the rules above cited, and the record before us, it is not only unnecessary but inappropriate to further discuss the claimed inadequacy of the price paid for the land involved at the sale here and now complained of.

The plaintiff in error further contends, however, that even though there was not such a gross inadequacy in the sale price as to make it unconscionable, there were irregularities in the sale proceedings which, when coupled with only a slight inadequacy of price, are sufficient to avoid the sale. Among these are asserted irregularities, not only in the sale proceedings, but also in the trial proceedings prior to the judgment of foreclosure. She disavows any and all claim that such errors were enough to invalidate said judgment, but her counsel seems to be of the opinion that they "are sufficient to affect the title to the property. * * *" In response to this argument, counsel for the defendants in error points out that according to section 189, O. S. 1931, 12 Okla. St. Ann. § 176, under which the plaintiff in error has proceeded, the title of bona fide purchasers cannot be affected by such proceedings, citing Berkey, Adm'r, v. Rader et al., 116 Okla. 258, 244 P. 184, and Howard v. Entreken, 24 Kan. 308, as well as other early Kansas cases construing the Kansas statute from which section 189, supra, has evolved. In support of this rule's application to the present case, our attention is called to the trial court's specific finding and conclusion that "the purchasers, J. H. Mayor and O. D. Mayor, purchased the land in question in good faith. * * *" Counsel for plaintiff in error do not deny their opponent's interpretation of the statute, but insist that there are certain facts and testimony indicating that the Mayors were not "purchasers in

good faith." Our inquiry, then, is limited to the single question of whether or not the finding of the trial court on this point is clearly against the weight of the evidence. It is urged in support of plaintiff in error's position that an examination of the judgment roll in the foreclosure action would have revealed to the purchasers or their attorneys the defects in the publication service therein, but it is conceded that even with such defects the judgment was not void. Accepting such an argument at its face value, one wonders, then, of what the judgment roll would have apprised a stranger to the proceedings that should have deterred him from purchasing the land involved or would have prevented him from being a purchaser in good faith. If, as counsel's argument naturally infers, the defects complained of were not fatal to the validity of the judgment, but were sufficient merely as ground for reversal on appeal, then how would they impart notice that the judgment was a nullity long after the judgment was entered and the period for appeal had expired? The judgment itself affirmatively shows that the service, which is now alleged to be defective, was specifically inquired into and judicially approved. As it is not claimed that the alleged defects in the service were fatal to the court's jurisdiction and the time had expired for reversing its decision as to the sufficiency of the service, strangers to the proceedings without actual notice of the falsity or error of such recital had every right to rely thereon in purchasing for a valuable consideration a title based thereon. See Pettis v. Johnston, 78 Okla. 277, 190 P. 681.

Another irregularity that is claimed for the execution sale in question is that it did not conform to the decree and order of sale. Our attention is called to the fact that according to both documents the 210 acres should have been *offered* for sale in certain definitely described smaller parcels and it is charged that this was not done; that the farm was *sold* en masse. The emphasis we have placed on two words

in the foregoing sentence gives the key to the fatal defect in the presentation of this point. It is manifest that the offering of property for sale and the sale of it are two different operations. The only evidence that the plaintiff in error cites in support of her charge that the land was not first opened to bids in the small parcels designated by the decree and order of sale is proof that it was *sold* en masse. No lengthy dissertation is necessary to demonstrate that such evidence is entirely inadequate to establish that the land was never *offered* for sale in parcels, and of course is insufficient to contradict a judgment to the contrary, especially when said judgment is supported by an unimpeached prior judicial finding upon the hearing of a motion to confirm said sale, that the sale was conducted fairly, regularly, and legally.

In addition to the alleged irregularities already dealt with, counsel attempts to fabricate proof of some sort of misconduct, fraud, or collusion on the part of the purchasers from fragments of testimony appearing in the record. It is first inferred that the Mayors "chilled" the bidding of the only other bidder at the sale by what might be described as business "compulsion" or "coercion." The only so-called evidence of this, however, is contained in the testimony of the attorney for the plaintiff in error, and it is very doubtful if this is sufficient to support even an inference. It appears merely that by the most subtle of innuendo the attorney may have intended to leave the impression that because the successful bidders were purchasers of "a great deal of lumber" and had not been buying any lumber from the unsuccessful bidder for some time prior to the sale, and the latter was desirous of re-establishing "friendly relations" with them, he was impelled to discontinue his bidding and permit "Mayor brothers to get the bargain." We submit that such a conversation related in such a manner is insufficient evidence to justify a reversal of the trial court's judgment in the present case. The same is true of the other testimony relied upon to impeach the court's finding that the Mayors were purchasers in good faith. It consists of portions of conversation attributed to them in which they spoke of having "stolen" the land. From the entire context of such alleged expressions, it is manifest that such words, if spoken, were used merely to convey the idea that they thought they had obtained a remarkable bargain at the sale. We have examined the evidence together with the court's finding that "J. H. Mayor and O. D. Mayor did not know of the sale of the land in question until the day before; * * *" and we are unable to find therein any proof of fraud, collusion, or coercion on the part of the purchasers and nothing that renders against the weight of the evidence the court's findings as to their good faith. From an examination of the record the conclusion is inescapable that if the Mayors spoke of their purchase as a "steal," they were merely using a figure of speech, and we are unable to find in the evidence of their conduct anything that is incriminating or contrary to the finding of the court as to their bona fides.

As we cannot say from the record presented that the judgment of the trial court in the instant case is against the weight of the evidence or contrary to law, the same is hereby affirmed.

BAYLESS, C. J., WELCH, V. C. J., and OSBORN and NEFF, JJ., concur.