JENNIE FARR BODINE (Insane), by MINNIE L. GORDON, Public Administrator and Ex Officio Public Guardian, Her Guardian, Plaintiff-Appellant, v. SAM FARR and GLENN L. CUNNINGHAM and JOHN SANFORD, Defendants-Appellants.—No. 38955.—182 S. W. (2d) 173.

Division One, July 3, 1944.

Rehearing Denied, September 5, 1944.

*S. P. Reynolds,* for appellant Jennie Farr Bodine.

*Maurice Pope* for appellants Glenn L. Cunningham and John Sanford.

*Groves & Watkins, Fred M. Wanger* and *O. W. Watkins, Jr.,* for appellant Sam Farr.

GANTT, J.—Attack on the judgment of the probate court of Buchanan County ordering and approving the sale of about fifty-three acres of land owned by a person of unsound mind. (Thirty-five acres tillable, balance timber land, access dirt road.)

The rule follows:

"A judgment cannot be set aside on the ground of fraud unless it is shown that fraud was practiced in the very act of obtaining the judgment; that the fraud went to the manner in which the judgment was procured rather than operating upon matters pertaining to the judgment itself; that the fraud prevented the unsuccessful party from presenting his case or defense; or that the fraud otherwise went to extrinsic, collateral acts or matters not before the court for examination or determination in the suit or proceeding in which the judgment was rendered.

"Such a proceeding cannot be used to obtain a further hearing upon matters, which were or could have been brought before the court to make a case or defense, either because the parties found further evidence bearing upon the truth or falsity of the testimony there, or because the parties neglected to litigate such matters in the original case. 'Courts of equity do not grant such relief for the purpose of giving the defeated party a second opportunity to be heard on the merits of case.' '' [Hockenberry v. Cooper County State Bank, 338 Mo. 31, 88 S. W. 2d, 1031, l. c. 1036.]

On June 1, 1940, the defendant Sam Farr, brother of Jennie Farr Bodine, of unsound mind, was appointed by the probate court guardian of the person and curator of the estate of his sister. In due course the court approved his first and second annual settlements. On May 13, 1942, he petitioned the court for an order to sell the above mentioned fifty-three acres of land. The petition alleged that the ward was indebted to a bank in the sum of $175.00 and that the income from her real estate was insufficient to pay her debts and

provide money for her support. Attached to the petition was an itemized statement of the personal property of the ward amounting to $13.23. On said date the court found the facts, as stated in the petition and statement, to be true and ordered the land sold at public or private sale after due appraisement. On May 15, 1942, three householders of the county appraised the land at $1000 and so reported to the court. On May 16, 1942, Farr, as guardian and curator, reported to the court a sale of the land to defendant Cunningham at private sale for $1000. On May 26, 1942, no exceptions having been filed, the court approved the sale. Thereupon the guardian and curator conveyed the land to Cunningham, who in due course paid the $1000 to the guardian and curator.

On October 3, 1942, Cunningham executed and delivered to defendant Sanford a deed of trust on the land to secure the payment of money loaned by Sanford to Cunningham.

On May 1, 1943, the plaintiff Minnie L. Gordon succeeded Farr as guardian and curator. On May 12, 1943, she filed this suit as guardian and curator of Jennie Farr Bodine. On May 24, 1943, the final settlement of Farr was approved and he was discharged as guardian and curator. On said day he delivered to Minnie L. Gordon as guardian and curator the balance due the estate as shown in his final settlement. She gave him a receipt for the amount.

As above stated, plaintiff seeks to have set aside the deed of Farr, as guardian and curator, to Cunningham. She also seeks to have set aside the deed of trust given by Cunningham to Sanford four months after Cunningham purchased the land. She also seeks an accounting from Farr of his administration of the estate.

In substance the petition alleged that Farr perpetrated a fraud on the court by selecting dishonest appraisers who undervalued the land; that he did so intending to purchase the land himself; that Cunningham purchased the land for Farr; that Cunningham paid no consideration for the land; that defendant Sanford had knowledge of the fraud perpetrated on the court and for these reasons the deed and deed of trust should be set aside. Defendants denied the allegations of the petition.

Plaintiff introduced in evidence the administration of the estate by Farr, as shown by the records of the probate court. She also introduced in evidence the files connected therewith. She also introduced in evidence the testimony of witnesses as to the value of the land on May 26, 1942, the date of the sale. Defendants also introduced in evidence the testimony of witnesses as to the value of the land on said date. The value of the land, as shown by the evidence, ranged from $1000 to about $2000.

The chancellor below found that the statement of Farr attached to the petition, which statement purported to show the condition of the estate, was fraudulent and not a correct account of his administration of the estate, and for that reason the deed to Cunningham was void.

He found that Farr was authorized by the court to borrow $125.00; that he borrowed $175.00, which the court approved. He also ruled this was a fraud upon the estate. He found that the reasonable market value of the land at the time of the sale was $35.00 per acre, and that the sale of the land at $18.75 per acre was less than three-fourths of its actual cash value. He ruled that the deed of trust was void for the reason Cunningham had no title to the land. He also found that after the sale of the land and with the consent of Cunningham, Farr permitted logs and trees of the value of $135.90 to be removed from the land, and that plaintiff is entitled to damages in said sum.

He entered judgment for the plaintiff against Farr for the $50.00 borrowed without authority of the court and for the $135.90 for the timber removed from the land, with six per cent interest per annum from the date of the judgment and for costs. He also entered judgment setting aside Farr's deed conveying the land to Cunningham and vested title to the same in Jennie Farr Bodine, subject to a lien in favor of Cunningham for the $1000 Cunningham paid for the land, with six per cent interest per annum from the date of the judgment. He also entered judgment directing the plaintiff, guardian and curator, to pay Cunningham $600.00 belonging to the estate as a credit on the lien in favor of Cunningham. Plaintiff appealed from the judgment lien of $1000 on the land. Defendants appealed from the judgment.

Issues of irregularity and mismanagement in the administration of the estate of a person of unsound mind are for the consideration of the probate court on the statements, reports and settlements of the guardian. All persons interested are accorded a hearing by the court on such issues. An interested party may have the judgment on such issues reviewed on appeal. Under the rule said parties are not authorized to have the same reviewed by a collateral attack on the judgment. [31 Am. Jur., Sec. 654, p. 230.] Plaintiff filed this suit on May 12, 1943. She alleged in the petition that Farr had not accounted for ▓▓▓▓ all of the money and property of the ward in his possession. Farr did not file his final settlement until May 24, 1943. In this situation the plaintiff could have presented her claims of fraud to the court. If dissatisfied with the ruling on the questions, she could appeal.

It follows that the only charge of fraud on the court is the allegation in the petition that the defendants and the appraisers conspired to defraud the ward by an undervaluation of the land and the sale of the same to Cunningham, brother-in-law and business associate of Farr, for the use and benefit of Farr.

There is no evidence tending to show that Sanford, who loaned money to Cunningham on the land, knew or had reason to believe that there was fraud in connection with the sale of the land. The court had jurisdiction to order the sale and there is no irregularity on the

face of the record. In this situation Sanford is not required to investigate the proceedings connected with the appraisement of the land. [Phillips v. Phoenix Trust Co., 332 Mo. 327, 58 S. W. (2d) 318.]

Furthermore, the uncontroverted evidence shows that Cunningham purchased the land, paid for the same, went into possession and rented the land the following year to Farr's son. If Cunningham owned the land, and, as stated, there is no evidence to the contrary, he could rent the same to Farr's son and he could permit either Farr or his son to take timber from the land. Furthermore, there is no evidence tending to show that timber sold by either Farr or his son was taken from the land.

The witnesses did not agree on a valuation of the land. A daughter of one of the appraisers married Farr's son, and another appraiser was a tenant on the land at the time of the appraisement. There is nothing in the record tending to show that this influenced the appraisement of the land. Two of the appraisers testified that $1000 was a fair valuation of the land. The other appraiser was not a witness. Other witnesses fixed the value at about $1000. The testimony of other witnesses ranged as high as $2000. There is nothing to indicate that any witnesses fraudulently valued the land. It increased in value after the sale to Cunningham. We are not authorized to set aside the deed and deed of trust on mere suspicion of the plaintiff.

The judgment is reversed and the cause remanded with directions to dismiss the petition. All concur.