## BRADBURN v. McINTOSH et al.

### No. 3299.

Circuit Court of Appeals, Tenth Circuit.

Feb. 4, 1947.

---

See also 159 F.2d 935.

Creekmore Wallace and Don Anderson, both of Oklahoma City, Okl. (B. E. Harkey, of Oklahoma City, Okl., on the briefs), for appellant.

Alfred Stevenson, of Holdenville, Okl., and Charles Champion, of Tulsa, Okl., for appellees.

R. A. Hockensmith, of Okmulgee, Okl., on the brief for Wilbur C. McIntosh and Mamie T. McIntosh.

Charles P. Gotwals, of Tulsa, Okl., and Wm. A. Killey and James D. Gibson, both of Muskogee, Okl., on the brief for The First Nat. Bank of Muskogee, Okl.

Before PHILLIPS and MURRAH, Circuit Judges, and BROADDUS, District Judge.

PHILLIPS, Circuit Judge.

Nancy Bradburn is a full-blood Creek Indian enrolled opposite Number 4973. She is the daughter of Cusschta Yarhola and the sister of Lessey Yarhola Hawkins Chisholm. Nancy was formerly married to William Severs.

On December 15, 1914, H. B. Seddicum, a government farmer, and a friend of Nancy, filed a petition under 58 Okl.St.Ann. § 851 in the County Court of Okfuskee County, Oklahoma, for the appointment of a guardian of Nancy on the ground that she was an incompetent. On January 12, 1915, the County Court found that Nancy had a large estate, that she had no business experience, was unable to count money, did not know the number of days in a week

nor the number of weeks in a month, and was incapable of handling her estate, and entered its order appointing Fred L. Strough guardian of Nancy's person and estate. On January 29, 1923, the County Court appointed H. C. Skinner co-guardian of Nancy's person and estate.

On August 18, 1921, Strough, as guardian, loaned $15,000 of Nancy's funds to Wilbur C. and Mamie T. McIntosh. To evidence such loan, the McIntoshes executed and delivered to Strough, as guardian, their promissory note for $15,000, bearing interest at 7 per cent per annum, dated August 18, 1921, due August 18, 1926, and to secure such note, executed and delivered to Strough, as guardian, a mortgage on certain real property situated in Okemah, Okfuskee County, Oklahoma. The loan was duly approved by the County Court of Okfuskee County.

Thereafter, Strough resigned as guardian and endorsed the note without recourse to Skinner, as guardian.

On December 24, 1915, Nancy filed a petition in the County Court of Okfuskee County in which she alleged that she was not an incompetent, and that if she had at any time been an incompetent, which she denied, she had been fully restored to capacity and was fully able, competent, and capable of attending to her own affairs and selecting and designating her agents and representatives, and that she fully understood the nature of the proceeding. The petition came on for hearing on January 19, 1916. Nancy appeared in person and by counsel, and Strough, as guardian, appeared by counsel. After hearing evidence, the County Court denied the petition by order entered January 29, 1916. On appeal, that order was affirmed by the District Court of Okfuskee County, Oklahoma, by order entered February 15, 1916. On appeal, the order of the District Court was affirmed by the Supreme Court of Oklahoma.

On January 10, 1923, Nancy and her husband, William Severs, filed a petition in the County Court of Okfuskee County to have Nancy restored to capacity. The petition came on for hearing on January 26, 1923. Nancy appeared in person and by counsel, and Strough, as guardian, appeared in person and by counsel. W. E. McKinney, a protestant, appeared by counsel. After the hearing, the petition was voluntarily dismissed by the petitioners.

On June 14, 1924, Nancy and her husband, William Severs, filed a petition in the County Court of Okfuskee County, seeking Nancy's restoration to capacity. In the petition, they alleged that since the appointment of her guardian, she had matured and had gained experience, knowledge, and information enabling her to thoroughly protect and care for her estate without the intervention of a guardian, and that she was entirely competent. On the same day, counsel for petitioners, Nancy and William Severs, filed an application in which they alleged that they did not believe that the county judge could fairly and impartially try the issues on the petition for restoration to capacity. On the same day, the county judge filed a written certificate reciting in part as follows: " * * * I, William L. Seawell; * * * do hereby certify my complete disqualification to hear and determine the issues presented" in such petition. On the same day, counsel for Nancy and William Severs and counsel for Skinner, as guardian, entered into and filed a written stipulation agreeing that E. Huser, a member of the Oklahoma State Bar and a practicing attorney, should act as special county judge to hear and determine the issues presented by the petition. On the same day, E. Huser took and filed a written oath as special county judge and proceeded to hear the petition. At the hearing, Nancy and William Severs appeared in person and by counsel. Skinner, as guardian, appeared in person and by counsel. Strough had theretofore resigned as guardian of Nancy. Cussehta Yarhola, Nancy's father, appeared in person. All parties announced they were ready for trial. The court proceeded to hear evidence, and thereupon found that Cussehta Yarhola is the father of Nancy, that the mother of Nancy has been dead for many years, that William Severs is the husband of Nancy, that Nancy and William Severs are residents of Okfuskee County, that Nancy was theretofore adjudged incompetent by the County Court of Okfuskee

County, that Nancy is now entirely sane and in all respects competent to manage and control her own estate, that Skinner, as guardian, has in his hands notes, cash, and other personal property belonging to Nancy, and entered an order adjudging Nancy to be sane and competent, and discharging the guardian, and directing him to deliver to Nancy all property of whatever description belonging to her in his hands as guardian.

After the order restoring Nancy to capacity was entered, and on June 14, 1924, Skinner endorsed and delivered the McIntosh note to Nancy and assigned and delivered the McIntosh mortgage to Nancy. Thereafter, on the same day, Nancy endorsed the note to House or order and assigned the mortgage to House. On July 9, 1924, House endorsed the McIntosh note to The First National Bank of Muskogee, Oklahoma,[1] and assigned the mortgage to the bank.

The bank acquired the note before maturity, for value, and in good faith. The note had not been previously dishonored. It was complete and regular on its face. The bank had no notice of any defect or infirmity in House's title thereto.

House and Nancy had entered into a contract under which she agreed to pay him 10 per cent of her estate if he succeeded in having her restored to capacity. The note was endorsed and delivered by Nancy to House, in payment for House's services in having her restored to capacity.

The McIntoshes paid the first two instalments of interest on the note to Nancy's guardian. On August 17, 1924, the McIntoshes paid the third instalment to the bank. On November 22, 1924, they paid the note in full. The McIntoshes had no notice of any defect or infirmity in House's title or the bank's title to the note. The bank marked the note paid and executed a release of the mortgage.

On September 22, 1942, Nancy, by Sukey Jenkins, her daughter and next friend, brought this action against the McIntoshes, the bank, and House. Nancy sought a decree vacating the order restoring her to capacity, canceling the transfers and assignments of the note and mortgage, and awarding her judgment on the note for the principal amount thereof, interest thereon from its date at 7 per cent per annum, and 10 per cent of the principal and interest as attorney's fees, and for the foreclosure of the mortgage.

As grounds for the relief sought, Nancy alleged that the proceeding in the County Court commenced on June 14, 1924, and the order entered therein restoring her to capacity are void; that she is incompetent in fact; and that House, the McIntoshes, and the bank entered into a scheme to cheat and defraud her and brought about the transfers and assignments of the note and mortgage through fraud and deceit.

The trial court found that Nancy was competent in fact on and after June 14, 1924; that the evidence wholly failed to establish the alleged fraud; that the bank was a holder of the note in due course; and that the funds with which the loan was made were unrestricted. From a judgment for the McIntoshes dismissing the action, Nancy has appealed.

At the trial, J. R. Preston, a physician and surgeon, testified that he located in Weleetka, Oklahoma, in January, 1918; that he had known Nancy for 28 years; that he became her family physician shortly after he located at Weleetka; that he had been in her home frequently; that Nancy was a good housekeeper and a good cook; that he had eaten meals at her home; that she was clean and dressed neatly; that she was able to converse with him in the English language; that when she paid her bills she knew the number of calls he had made at her home and the charge for each call; that she was able to count change; that, in his opinion, she was a woman of average intelligence; and that he believed she would understand the meaning and effect of a deed, oil lease, contract, mortgage, or note if the same were fully interpreted to her.

Ruby Hendrix testified that she lived in Weleetka; that she conducted a ladies' ready-to-wear business there from 1925 to 1931; that thereafter she was employed in the ladies' ready-to-wear department of a store known as Brown Trading; that she

[1] Hereinafter called the bank.

had known Nancy since 1925; that Nancy was a customer of hers; that Nancy purchased staple merchandise; that on one occasion she accompanied Nancy to Dallas to purchase merchandise; that Nancy was a good judge of the value and quality of merchandise; that she insisted on the garments fitting her; that she dressed well and neatly; that she could make change; that she also purchased merchandise for her children; that when she ordered merchandise and it was not satisfactory, she rejected it; that Nancy was above the average in intelligence; that she had frequently been in Nancy's house; and that Nancy was a good housekeeper.

L. H. McDermott testified that he knew Nancy, her father, Cussehta, and her husbands, William Severs and Roy Bradburn; that Nancy purchased the household requirements of household furnishings, dry goods, and groceries for her family; and that, in his opinion, she could understand the meaning of a deed, contract, or lease, if properly interpreted to her.

W. J. Brown testified that he lived near Weleetka; that he had known Nancy nearly all her life and knew her father, her mother, and her sister, Lessey; that he interpreted for Nancy when she made her will; that Nancy told the lawyer who was drafting the will what property she owned and how she wanted it disposed of; that she understood the meaning of the will; that, in his opinion, she would understand the effect of a deed if it were properly interpreted to her; that she purchased groceries and dry goods for her family; that on one occasion Nancy ordered furniture through a merchant, which did not come up to representations, and she rejected it.

D. W. Johnston, a banker at Weleetka, testified that he had known Nancy for 25 or 30 years; that he knew her husbands, William Severs and Roy Bradburn, her father, Cussehta, and her sister, Lessey; that, from 1929 to 1937, he acted as trustee under a trust indenture executed by Nancy; that she did a banking business at his bank; that she could carry on a conversation in English; that he made loans to her; that she understood the effect of a promissory note; that, in his opinion, she was a woman of average intelligence; and that she could understand the meaning of an instrument if it were properly interpreted to her.

R. S. Cate testified that he had known Nancy since 1917; that she could carry on a conversation in English; that he was present when she executed a trust indenture transferring her property to trustees, that he explained the trust indenture and had it interpreted to her and he was satisfied she understood it; that he discussed with her the reports of the trustees; that she understood the reports and appreciated how the trust estate was being administered.

 While there was evidence introduced in behalf of Nancy from which the court might have found that she was not competent, we cannot say, in the light of the foregoing testimony, both lay and professional, that the finding that Nancy was competent on and after June 14, 1924, is not supported by substantial evidence or that it is clearly erroneous. It is, therefore, binding on this court.[2]

 County courts in Oklahoma are courts of record and have original general jurisdiction over probate matters.[3] The orders and judgments of such courts, when acting within their jurisdiction, are entitled to the same favorable presumption and the same immunity from collateral attack as are accorded those of other courts' of general jurisdiction.[4] Every fact not negatived by the record is presumed in support of their orders and judgments and, where the record of the court is silent, it must be presumed in support of the proceedings that the court inquired into and found the existence of facts authorizing it to render the judgment which it did.[5]

[2] Flores v. Bruesselbach, 10 Cir., 149 F.2d 616; Federal Rules of Civil Procedure, rule 52(a), 28 U.S.C.A. following section 723c.

[3] Welch v. Focht, 67 Okl. 275, 171 P. 730, 732, L.R.A.1918D, 1163; Woods v. Vann, 125 Okl. 121, 256 P. 918, 921; Gallaghar v. Petree, 103 Okl. 295, 230 P. 477, 479; Johnson v. Petty, 118 Okl. 178, 246 P. 848, 849; Baird v. Patterson, 172 Okl. 158, 44 P.2d 90, 91.

[4] Welch v. Focht, 67 Okl. 275, 171 P. 730, 732, L.R.A.1918D, 1163; Gallaghar v. Petree, 103 Okl. 295, 230 P. 477, 479.

[5] Welch v. Focht, 67 Okl. 275, 171 P. 730, 732, L.R.A.1918D, 1163.

58 O.S.1941 § 851 provides that when it is represented to the county court, upon verified petition of any relative or friend, that any person is mentally incompetent to manage his property, the judge shall give notice to the alleged incompetent of the "time and place of hearing the case" not less than five days before the time appointed for the hearing.

58 O.S.1941 § 852 provides that if, after a full hearing and examination, it appears to the judge that such person "is incapable of taking care of himself and managing his property," he must appoint a guardian for his person and estate.

■ 58 O.S.1941 § 854 provides that any person who has been declared insane, or the guardian of such person, or any relative of such person within the third degree, or any friend, may apply by petition to the county court in which he was declared insane to have the fact of his restoration to capacity judicially determined; that the petition shall be verified and shall state that such person is then sane; that upon receiving the petition, the judge shall appoint a day for the hearing and cause notice of the hearing to be given to the guardian of the petitioner, to his or her husband or wife, and to his or her father or mother, if living in the county; that at the hearing the guardian or relative of the petitioner and, in the discretion of the judge, any other person, may contest the right of the petitioner to the relief demanded, and that, if it be found that the petitioner is of sound mind and capable of taking care of himself and his property, his capacity shall be adjudged and the guardianship shall cease. Section 854 applies to a person who has been adjudged an incompetent.[6]

The petition for restoration to capacity, filed June 14, 1924, was subscribed and sworn to by Nancy before a notary public.

Verify means to confirm or substantiate by oath.[7]

■ While the conventional form of verification is absent, the notary certified that Nancy subscribed and swore to the petition. That, we think, was a sufficient verification.[8] But if defective, it did not render the proceeding open to collateral attack.[9]

■ The proceeding for restoration to capacity was a continuation of the original proceeding.[10] It will be observed that § 851, supra, requires that not less than *five days'* notice of the time and place of the hearing shall be given to the alleged incompetent, and that § 854, supra, merely requires that notice of the hearing shall be given to the guardian, the petitioner's husband or wife, and father or mother. Thus, the latter section outlines a procedure calculated to expedite a restoration proceeding.

■ While notice was not given of the hearing on the petition for restoration to capacity, it is obvious that the guardian, Nancy's husband, and her father had actual notice. They appeared at the hearing. The guardian appeared, both in person and by counsel. Under the circumstances, a formal notice would have served no purpose. Evidence was introduced at the hearing and it must be presumed, absent negation thereof by the record, that the guardian made such contest of the right to the relief sought as he deemed proper, and that the findings of the special judge were supported by substantial evidence.

15 O.S.1941 § 24 provides that "after his incapacity has been judicially determined, a person of unsound mind can make no con· veyance or other contract, * * * nor waive any right, until his restoration to capacity is judicially determined."

■ But it has been expressly held that § 24, supra, has no relation to the right of

6 In re Revard's Guardianship, 134 Okl. 202, 272 P. 480, 482.

7 Marshall v. State, 116 Neb. 45, 215 N.W. 564, 566; Bristol v. Buck, 201 App. Div. 100, 194 N.Y.S. 53, 55; Agricultural Bond & Credit Corp. v. Courtenay Farmers' Co-op. Ass'n, 64 N.D. 253, 251 N. W. 881, 886; Gossard v. Vawter, 215 Ind. 581, 21 N.E.2d 416, 417; S. B. Mc-

Master, Inc., v. Chevrolet Motor Co., D. C., 3 F.2d 469, 471.

8 Marshall v. State, 116 Neb. 45, 215 N.W. 564, 566.

9 McKenzie v. Donnell, 151 Mo. 431, 52 S.W. 214, 218.

10 Cockrill v. Cockrill, 8 Cir., 92 F. 811, 819; Jorgenson v. Winter, 69 Wash. 573, 125 P. 957, 959.

one who has been adjudged an incompetent to institute and prosecute, either in his own name or otherwise, proceedings to set aside such adjudication.[11]

■ 22 O.S.1941 § 572 provides that in any cause pending in any court of record in Oklahoma, if the presiding judge shall be incompetent or disqualified to try, hear, or render judgment in such cause, the parties or their attorneys of record may agree upon some member of the bar of the county, if it be in the county or superior court, to act as special judge to hear and decide and render judgment in the same manner and to the same effect as a qualified judge.[12] The right of a person who has been adjudged an incompetent to institute and prosecute a proceeding for restoration to capacity must embrace the right to employ and be represented by counsel,[13] and to secure a fair and impartial hearing. It must, therefore, embrace the right to disqualify a judge and agree upon the appointment of a special judge. While William Severs, as next friend of Nancy, and counsel for Nancy could not waive any substantive right of Nancy, they could agree to matters of procedure involving no prejudice to her rights that would facilitate the hearing on her petition.[14] We think there can be no doubt of the power of Nancy's attorneys to enter into a stipulation for the appointment of the special judge. We conclude that the order restoring Nancy to capacity is not void.

■ A party to a judgment, or those in privity with him, may impeach such judgment in a collateral proceeding for inceptional or jurisdictional fraud; that is, fraud which goes to the very jurisdiction of the court and prevents it from obtaining the requisite power or jurisdiction to entertain or decide the issues in controversy. Thus, where, because of fraud, the party against whom the judgment was rendered was not served with notice or process or was prevented from having a hearing, the judgment against him would ordinarily be a nullity.[15]

■ Equitable relief from a judgment may be obtained on the ground of extrinsic or collateral fraud.[16] Fraud is regarded as extrinsic or collateral where it prevents a party from having a trial or from presenting his cause of action or his defense, or induces him to withdraw a defense, or operates upon matters pertaining, not to the judgment itself, but to the manner in which it was procured.[17] Where the judgment was founded on a fraudulent instrument or perjured evidence, or the fraudulent acts pertain to an issue involved

[11] Appeal of Barnett, 122 Okl. 160, 252 P. 410, 411.

[12] See Hengst v. Burnett, 40 Okl. 42, 135 P. 1062, 1064.

[13] See Appeal of Barnett, 122 Okl. 160, 252 P. 410, 411.

[14] Franklin v. Margay Oil Corporation, 194 Okl. 519, 153 P.2d 486, 496; Thompson v. Buffalo Land & Coal Co., 77 W. Va. 782, 88 S.E. 1040, 1042, 1043; Mankin v. Dickinson, 76 W.Va. 128, 85 S.E. 74, 75, Ann.Cas.1917D, 120; Lemmon v. Herbert, 92 Va. 653, 24 S.E. 249, 251; Bruner v. Nordmeyer, 48 Okl. 415, 150 P. 159, 161, 162; Neil v. Union Nat. Bank, 72 Okl. 116, 178 P. 659, 661; Anderson v. Anderson, 133 N.J. 311, 32 A. 2d 83, 85; Morris v. Glaser, 106 N.J. Eq. 585, 151 A. 766, 769; Caruso v. Caruso, 101 N.J.Eq. 350, 139 A. 812, 815; In re Moore, 209 U.S. 490, 496–499, 28 S.Ct. 585, 52 L.Ed. 904, 14 Ann.Cas. 1164; Kingsbury v. Buckner, 134 U.S. 650, 680, 10 S.Ct. 638, 33 L.Ed. 1047.

[15] Lucy v. Deas, 59 Fla. 552, 52 So. 515, 516; Mahoney v. State Ins. Co., 133 Iowa 570, 110 N.W. 1041, 1042, 1043, 9

L.R.A.,N.S., 490; Freeman on Judgments, 5th Ed., Vol. 1, § 331.

See, also, Hill v. Cole, 192 Okl. 476, 137 P.2d 579, 581; Skipper v. Schumacher, 124 Fla. 384, 169 So. 58, 66; Bleakley v. Barclay, 75 Kan. 462, 89 P. 906, 909, 10 L.R.A.,N.S., 230; State ex rel. Adam v. Martin, 198 Ind. 516, 154 N.E. 284, 287.

[16] United States v. Throckmorton, 98 U.S. 61, 68, 25 L.Ed. 93; Chicago, R. I. & P. R. Co. v. Callicotte, 8 Cir., 267 F. 799, 803; Gray v. McKnight, 75 Okl. 268, 183 P. 489, 494; Freeman on Judgments, 5th Ed., Vol. 3, § 1233.

[17] United States v. Throckmorton, 98 U.S. 61, 65, 66, 25 L.Ed. 93; Farley v. Davis, 10 Wash.2d 62, 116 P.2d 263, 268, 155 A.L.R. 1302; Tankar Gas v. Lumbermen's Mut. Casualty Co., 215 Minn. 265, 9 N.W.2d 754, 759, 146 A.L.R. 1223; Jacobson v. Brey, 72 N.D. 269, 6 N.W.2d 269, 273; Bodine v. Farr, 353 Mo. 206, 182 S.W.2d 173, 174; Mills v. Baird, Tex. Civ.App., 147 S.W.2d 312, 316; Brown v. Trent, 36 Okl. 239, 128 P. 895, 898; Cochran v. Barkus, 112 Okl. 180, 240 P.

in the original action and litigated therein, the fraud is regarded as intrinsic.[18]

The mandate of the court of equity does not operate upon the judgment itself. The decree grants relief against the consequences of the judgment. It adjudges the rights of the parties inter se in relation to the judgment and is directed to the parties only, or, if necessary, to the executive officers of the law, and operates in personam upon such persons or officers.[19]

Equitable relief, however, will not be granted as against an innocent third person who, in good faith, has acted on the faith of the challenged judgment.[20]

Here, the proof wholly failed to establish that either the McIntoshes or the bank participated in, or had any knowledge of, any fraud practiced on Nancy.

Since the order restoring Nancy to capacity was not void on the face of the proceeding in which it was entered, Nancy was not entitled to any relief with respect to such order as against the McIntoshes and the bank.

The bank was a holder of the note in due course.[21] As such, it held the instrument free from any defect of title of prior parties and free from defenses available to prior parties among themselves, and was entitled to enforce payment of the note for the full amount thereof against the McIntoshes.[22] It follows that payment of the note by the McIntoshes to the bank discharged the note, and Nancy is not entitled to judgment on the note or for the foreclosure of the mortgage.

The contract entered into between House and Nancy, after she had been adjudged incompetent and before the entry of the order restoring her to capacity, by which she agreed to pay House 10 per cent of the value of her estate in the event he brought about her restoration to capacity, was void by virtue of 15 O.S.1941 § 24. Whether House and others, by fraudulent representations and pretenses, overreached Nancy and induced her to transfer the note to House in fulfillment of the void contract, we need not here decide. This is an action to restore the note and mortgage to Nancy, to recover judgment on the note, and for the foreclosure of the mortgage. It is not an action to recover from House the consideration paid to him under the void contract. As to the possible merits of such a claim, we express no opinion.

Affirmed.

321, 322; Freeman on Judgments, 5th Ed., Vol. 3, § 1233.

[18] United States v. Throckmorton, 98 U.S. 61, 66, 25 L.Ed. 93; Mills v. Baird, Tex.Civ.App., 147 S.W.2d 312, 316; Jacobson v. Brey, 72 N.D. 269, 6 N.W.2d 269, 273; Gray v. McKnight, 75 Okl. 268, 183 P. 489, 494; Brown v. Trent, 36 Okl. 239, 128 P. 895, 898; Aetna Casualty & Surety Co. v. Abbott, 4 Cir., 130 F.2d 40, 43, 44; Freeman on Judgments, 5th Ed., Vol. 3, § 1233.

[19] United States v. Mashunkashey, 10 Cir., 72 F.2d 847, 851; Arrowsmith v. Gleason, 129 U.S. 86, 100, 9 S.Ct. 237, 32 L.Ed. 630; Chicago, R. I. & P. R. Co. v. Callicotte, 8 Cir., 267 F. 799, 804.

[20] Crow v. Van Ness, Tex.Civ.App., 232 S.W. 539, 542; Pettis v. Johnston, 78 Okl. 277, 190 P. 681, 692; Baldwin v. Mayor, 188 Okl. 272, 108 P.2d 132, 134; Freeman on Judgments, 5th Ed., Vol. 3, § 1211. See, also, Occidental Life Ins. Co. v. Minton, 181 Okl. 298, 73 P.2d 440, 442.

[21] 48 Okl.St.Ann. § 122.

[22] 48 Okl.St.Ann. § 127.